Argued June 2, reversed with directions August 2, 1954

IN THE MATTER OF THE APPLICATION OF GORDON
SAYRE LITTLE FOR A WRIT OF HABEAS CORPUS *v.*
GLADDEN
273 P. 2d 443

*Merlin Estep* argued the cause for appellant. On the briefs were Hewitt, Estep & Sorensen, of Salem.

*Lloyd G. Hammel,* Assistant Attorney General, of Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, of Salem.

Before LATOURETTE, Chief Justice, and LUSK, BRAND and TOOZE, Justices.

## LUSK, J.

Gordon Sayre Little, a prisoner in the Oregon state penitentiary, filed a petition for a writ of habeas corpus in the Circuit Court for Marion County. The writ was issued, the case put at issue, and after a hearing the court entered an order dismissing the proceeding and remanding the prisoner. Plaintiff has appealed.

It appears from the record that the plaintiff on March 27, 1943, was sentenced by the Circuit Court for Marion County to serve five years in the penitentiary on a conviction of burglary with credit for time served in the county jail. The number of this case was 30658. On the same day the plaintiff was sentenced by the same court to serve three years in the penitentiary on a conviction of forgery, such sentence to commence at the expiration of the five-year term in Case No. 30658. The number of the forgery case was 30650. On April 16, 1943, the district attorney for Marion County filed an information in that court under the Habitual Criminal Act charging the plaintiff with having committed seven felonies. Two of these were the burglary and forgery convictions just mentioned. The other five were prior convictions, the first and second in Oregon, the third and fourth in Arizona, and the fifth in Idaho. The number assigned to this proceeding was 30723.

There was a jury trial on the charges set forth in the information under the Habitual Criminal Act. The jury found that the plaintiff was the same person who had been convicted of the felonies enumerated, and thereupon the court entered judgment as follows:

"Now on this 3rd day of July, 1943, this being the time fixed for the imposition of sentence upon the defendant, Gordon Sayre Little, * * * and now based upon the verdict of the jury, which jury found that the defendant, Gordon Sayre Little, has been convicted of seven felonies, and the Court being now fully advised in the premises,

"IT IS THEREFORE ORDERED AND ADJUDGED by the Court that the defendant, Gordon Sayre Little, is guilty of violation of the HABITUAL CRIMINAL ACT and that he be confined in the Oregon State Penitentiary, as a prisoner, without limitation of time, the maximum of said sentence being for the balance of his natural life. The State to recover its costs and disbursements herein."

The return of the warden of the penitentiary to the writ of habeas corpus averred that his authority, and the cause of plaintiff's imprisonment, were the three sentences of the Circuit Court for Marion County above described, to wit, the five-year sentence for burglary, the three-year sentence for forgery, and the life sentence in the habitual criminal case.

It is contended by the plaintiff that the life sentence is void because it is a sentence for a nonexistent crime. We have repeatedly held that the Habitual Criminal Act creates no new offense but merely provides a proceeding by which to determine the penalty to be imposed on one previously convicted of a crime. *Castle v. Gladden,* 201 Or 353, 270 P2d 675, and cases cited. In other words, it is not a crime to be an habitual criminal. It is, rather, a status which makes one con-

victed of a felony liable to a heavier penalty than the law, but for the proof of that status, would authorize. In the case of one who has been four times convicted of felonies that penalty, under the statute in effect in 1943, was life imprisonment. OCLA § 26-2803. The procedure for determining whether the increased penalty must be imposed is set forth in OCLA § 26-2804. When it is found, in accordance with that procedure, that a person convicted of a felony had theretofore been convicted of three other felonies, the mandatory penalty *for the fourth offense* is life imprisonment. (It, of course, makes no difference that, as in this case, there are more than three previous felony convictions.) The proceeding in which that determination is made is simply a continuation of the case in which the defendant had previously been found guilty of a fourth felony. *Borders v. Alexander,* 183 Or 488, 493, 194 P2d 414. And, where a penalty under the statute prescribing the specific punishment for that offense has been imposed, the sentencing judge is required to "vacate the previous sentence, deducting from the new sentence all time actually served on the sentence so vacated." In this case there were two convictions on either one of which the plaintiff might have been sentenced to life imprisonment under the Habitual Criminal Act. These were the convictions of burglary and forgery, both on March 27, 1943. The former was the sixth and the latter the seventh conviction. It is impossible to determine from this record whether the sentence of life imprisonment was for burglary, forgery, or either. Had either of the previous sentences been vacated the difficulty might not be here, but the court neglected to comply with that direction of the statute. Nor does the language of the sentence give us any light. It recites "that defendant, Gordon Sayre

Little, has been convicted of seven felonies" and adjudges that he "is guilty of violation of the Habitual Criminal Act", and orders him confined in the state penitentiary for the balance of his natural life. For all that appears the sentence imposed was, as the judgment states, for a violation of the Habitual Criminal Act by the commission of seven felonies and not for the crime of burglary or the crime of forgery. The case numbers of the various proceedings add to the difficulty. The burglary and forgery prosecutions, and the habitual criminal proceeding, each bear separate numbers. This fact "suggests, though it may not conclusively prove, that the information was treated as a charge of a separate offense". *Broom v. Alexander,* 198 Or 551, 559, 255 P2d 1081. In *Borders v. Alexander,* supra, it was argued that the judgment in an habitual criminal proceeding was "based upon previous convictions of felonies" and not upon the crime of forgery of which the prisoner had been last convicted. It appeared in that case that a sentence of five years in the penitentiary for forgery, a third felony conviction, had been pronounced by the court, and afterwards that an information under the Habitual Criminal Act was filed, and that the court entered a judgment in that proceeding which recited that the defendant was the same person "previously convicted of felonies" charged in such information and sentenced him to ten years in the penitentiary. We held that while the judgment was "loosely drawn and somewhat ambiguous" yet it sufficiently appeared that the ten-year sentence was imposed for the crime of forgery and not for the crime of being an habitual criminal, which is no crime at all. In arriving at that conclusion we applied the established rule that the objection to a sentence on the ground that it does not state or does not sufficiently

describe the offense of which the defendant was found guilty, or that the defendant was guilty of any named crime, is technical rather than substantial, and that the whole record may be looked to for the purpose of supplying a deficiency at a particular place. If "the record shows everything necessary to justify the punishment inflicted" that is sufficient. *Pointer v. United States,* 151 US 396, 38 L ed 208, 14 S Ct 410. One of the controlling facts in the Borders case was that the court, in compliance with the requirement of the statute, vacated the previous sentence, thus clearly indicating the intention that the new sentence was imposed as punishment for the crime of forgery for which the previous sentence had been imposed. In addition, the record in the Borders case shows that there was only one crime for which a sentence under the Habitual Criminal Act could have been passed. In the case before us, as already stated, the plaintiff had been convicted of two crimes, for either one of which the court could have imposed a life sentence under the Habitual Criminal Act. Neither of the sentences for those crimes was vacated. The language of the habitual criminal judgment itself indicates an intention to impose sentence for the "crime" of being an habitual criminal, and there is no evidence anywhere else in the record of a different intention.

It follows that the sentence of the plaintiff to life imprisonment is void. The previous sentences of five years for burglary and three years for forgery have been completely served, and it remains to determine whether the plaintiff is entitled to be granted an outright release.

Although the sentence is void, all the proceedings leading up to it are valid. The plaintiff finds no fault with them except in one particular to be mentioned

later. He was legally convicted of burglary, legally convicted of forgery, and legally found to be a person who had committed seven felonies. Under the statute then in force it became the mandatory duty of the judge to impose a sentence of life imprisonment for one or the other of the two felonies of which the plaintiff was convicted on March 27, 1943. That duty was neglected either through inadvertence or misinterpretation of the law.

■ In a series of recent habeas corpus cases in the state of Washington the Supreme Court of that state found it necessary to declare void sentences based upon a finding that the defendant was "guilty of the crime of habitual criminal". There is no such crime in Washington, and the sentences were held to be, not merely erroneous, but absolutely void. Nevertheless, the court ordered the petitioners returned to the sentencing courts so that proper sentences might be imposed. See, *Blake v. Mahoney,* 9 Wash2d 110, 113 P2d 1028; *In re Cress,* 13 Wash2d 7, 123 P2d 767; *In re Towne,* 14 Wash2d 633, 129 P2d 230; *In re Richardson,* 16 Wash2d 709, 133 P2d 810; *Lee v. Cranor,* 38 Wash2d 831, 233 P2d 535. In the Towne case the court, speaking through Steinert, J., summed up the situation thus: "Petitioner's status is, therefore, that of a convicted criminal who has not yet been properly sentenced." It was the view of the Washington court that in that posture of affairs the convicted criminal should not be set free, but that he should be properly sentenced. In the Cress case the court cited, among other authorities, *In re Bonner,* 151 US 242, 14 S Ct 323, 38 L ed 149, a habeas corpus proceeding in which it appeared that the prisoner had been sentenced to imprisonment in the penitentiary for one year. The part of the sentence designating the penitentiary as the place of confine-

ment was void. The court, in an opinion by Mr. Justice Field, discussed the propriety of the practice, in cases where the only defect in the proceeding was in the sentence, of permitting the original court to "set aside what it had no authority to do and substitute directions required by the law to be done upon the conviction of the offender." The court then said:

"Some of the state courts have expressed themselves strongly in favor of the adoption of this course, where the defects complained of consist only in the judgment—in its extent or mode, or place of punishment—the conviction being in all repects regular. In Beale v. Com. 25 Pa. 11, 22, the supreme court of Pennsylvania said: 'The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether, because the court committed error in passing the sentence. If this court sanctioned such a rule it would fail to perform the chief duty for which it was established.'

"It is true that this language was used in a case pending in the supreme court of a state on writ of error, but if then the court would send the case back to have the error, not touching the verdict, corrected and justice enforced, there is the same reason why such correction should be made when the prisoner is discharged on habeas corpus for alleged defects of jurisdiction in the rendition of the judgment under which he is held. The end sought by him—to be relieved from the defects in the judgment rendered to his injury is secured, and at the same time the community is not made to suffer by a failure in the enforcement of justice against him."

The Supreme Court of the United States found authority for such a course in § 761 of the Revised Statutes. That section has its counterpart in the fol-

lowing provision of our habeas corpus statute, ORS 34-670:

"The plaintiff in the proceeding, on the return of the writ, may, by replication, verified as in an action, controvert any of the material facts set forth in the return, or he may allege therein any fact to show, either that his imprisonment or restraint is unlawful, or that he is entitled to his discharge; and thereupon the court or judge shall proceed in a summary way to hear such evidence as may be produced in support of or against the imprisonment or restraint, and to dispose of the party as the law and justice of the case may require."

The order in the Bonner case read:

"*Ordered,* that the writ of habeas corpus issue, and that the petitioner be discharged from the custody of the warden of the penitentiary at Anamosa in the state of Iowa; but without prejudice to the right of the United States to take any lawful measures to have the petitioner sentenced in accordance with law upon the verdict against him."

Similar orders were made in the Washington cases cited under the authority of a statute which the court construed as having the same effect as § 761 of the Revised Statutes.

In *Huffman v. Alexander,* 197 Or 283, 329, 251 P2d 87, 253 P2d 289, we spoke of "the recent flood of litigation flowing from behind prison walls". Where such litigation involves only procedural defects of the kind present in this case—where the court had the right to take cognizance of the alleged offense (*In re Bonner,* supra) and no claim is made of unfairness in the trial or injustice in the verdict, or that the prisoner's constitutional rights were invaded—it is highly important today for the protection of society that the courts adopt as a principle of decision the rule of the

Bonner case, for, as Mr. Justice Field said in the opinion in that case, "The judges of all courts of record are magistrates, and their object should be not to turn loose upon society persons who have been justly convicted of criminal offenses, but, where the punishment imposed, in the mode, extent, or place of its execution, has exceeded the law, to have it corrected by calling the attention of the court to such excess."

It will be objected that it is now too late to impose a proper sentence under the Habitual Criminal Act since the sentences on both the burglary and forgery charges have been served, and therefore neither can be vacated as the statute requires to be done. We so held in *Broom v. Alexander,* supra. We have been urged to re-examine the grounds of that decision and think it proper that we do so.

The controlling statute is OCLA § 26-2804. We quote it in full, italicizing language deemed to be particularly important:

"*If at any time, either after sentence or conviction,* it shall appear that a person convicted of a felony has previously been convicted of crimes as set forth in this act, it shall be the duty of the district attorney of the county in which said conviction was had to file an information, accusing the said person of such previous convictions. Whereupon, the court in which such conviction was had shall cause the said person, *whether confined in prison or otherwise,* to be brought before it and shall inform him of the allegations contained in such information and of his right to be tried as to the truth thereof according to law, and shall require such offender to say whether he is the same person as charged in such information or not. If he says he is not the same person or refuses to answer, or remains silent, his plea, or the fact of his silence, shall be entered of record and a jury shall be em-

paneled to inquire whether the offender is the same person mentioned in the several records as set forth in such information. If the jury finds that he is the same person or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he is the same person, the court shall sentence him to the punishment hereinbefore provided, and shall vacate the previous sentence, deducting from the new sentence all time actually served on the sentence so vacated.

''Whenever it shall become known to any warden or prison, probation, parole or police officer or other peace officer that any person charged with or convicted of a felony has been previously convicted within the meaning of said sections hereinbefore set forth, it shall become his duty forthwith to report the facts to the district attorney of the county from which he was sentenced.''

We reasoned in the Broom case opinion that the information should be filed before the original sentence had been fully served, otherwise the statute would not provide that the court should vacate the previous sentence.

We referred to certain language in *Macomber v. State,* 181 Or 208, 180 P2d 793, as indicating approval of the construction adopted, and also to *State v. Moore,* 192 Or 39, 233 P2d 253, as having been decided on the basis of that construction. But the question decided in the Broom case was not in the Macomber case, and while in the Moore case we were at some pains to show that the habitual criminal information was filed before the previous sentence had been fully served, we neglected to point out—what the record discloses—*that the new sentence was not imposed and the previous sentence was not vacated until after that sentence had been fully served.*

The question came before the Appellate Division

(Third Dept.) of the Supreme Court of New York in *People ex rel. Fernandez v. Kaiser,* 230 App Div 646, 246 NYS 309. The court held that where a person had been convicted of a felony and fully served the sentence, and afterwards it was discovered that he had, previous to such conviction, been convicted of other felonies, the sentencing court had the power, on proof of such convictions, to vacate its prior sentence and sentence the defendant again as a second offender. Concerning § 1943 of the New York Penal Law, which is identical with OCLA § 26-2804, the court said:

> "The section does not limit the time within which the procedure prescribed thereby shall be followed. It directs that it shall be followed upon discovery of the facts therein set forth, 'at any time, either after sentence or conviction' and that the prisoner shall then be resentenced 'whether confined in prison or otherwise.'
>
> \* \* \* \* \*
>
> "Relator had served the sentence which was revoked, and it is claimed that the court could not revoke that sentence and impose another in its place, because it had been completed. But that sentence was insufficient in the light of the facts which were discovered after it was imposed, and the only question is whether or not the Legislature had the power to require the court to enlarge it so as to make it conform to the requirements of the sections under discussion."

This involved, the court held, no violation of the constitutional guaranty against double jeopardy. The judgment of the appellate division was unanimously affirmed by the Court of Appeals without opinion, 256 NY 581, 177 NE 149, and certiorari was denied by the Supreme Court of the United States, 284 US 631, 76 Led 537, 52 S Ct 16. This decision was followed in Ohio and Louisiana, whose statutes are patterned after

those of New York. *State v. Sudekatus,* 72 Oh App 165, 51 NE2d 22; *In re Sims* (Oh App) 104 NE2d 193; *State v. George,* 218 La 18, 48 So2d 265.

We took our Habitual Criminal Act from the Baumes Laws of New York, and therefore the decisions of the New York court construing the law have more than ordinarily persuasive force with this court. *Castle v. Gladden,* supra; *Macomber v. State,* supra. Apart, however, from the question of judicial authority elsewhere, we are forced to the conclusion, after a careful re-examination of the question, that we fell into error in the Broom case by failing to give full effect to the legislative direction that a proceeding under the Habitual Criminal Act may be commenced by filing an information ''at any time, either after sentence or conviction'', and whether the person is ''confined in prison or otherwise''. The statutory language must be taken to mean what it says, and a limitation cannot properly be placed on the command and authorization of the legislature where the legislature has placed none. In a word, we think that the legislature neither said nor intended that an information might be filed at any time either after sentence or conviction, *provided the person informed against had not fully served the previous sentence,* and therefore that the court may not add this proviso to the statute. Insofar as the Broom case conflicts with these views it must be deemed overruled.

Though the vacation of a sentence which has been fully served may be a mere formality, it is certainly not something beyond the power of the legislature to require. In a case like this, it would at least serve the purpose of identifying the crime to which the new sentence was intended to apply. And, in any case of a fourth felony conviction, vacation of a previous sen-

tence is little more than a formality. The requirement of deduction of time served is then of no importance. *State v. Sudekatus*, supra. The sentence of imprisonment for life is mandatory, and the order of vacation amounts to little more than a formal record of the fact that the previous sentence has been supplanted by the only sentence which the law then recognizes. In *Commonwealth ex rel. Dugan v. Ashe*, 338 Pa 541, 13 A2d 523, the court answered the objection that a previous sentence had not been vacated, as required by the Habitual Criminal Act of Pennsylvania, by saying:

> "What the relators complains of in this case can be remedied without the issuance of a writ of habeas corpus. The sentence of the court was incomplete in that previous sentences were not vacated as section 4 of the Act of 1929 requires. The sentence can be completed by order of this court in conformity with the requirement above stated. See Commonwealth v. Sutton, 125 Pa. Superior Ct. 407, 189 A. 556."

If such an objection can be so readily disposed of we see no reason, constitutional or otherwise, why the court which imposed sentence in this case may not correct what it did wrongly by now entering an order of vacation of either the sentence for burglary or the sentence for forgery passed on March 27, 1943, and imposing the mandatory life sentence in place of the sentence so vacated.

■ It is contended that the court erred in sustaining an objection by the defendant to the following question put to a witness called by the plaintiff:

> "Q  Mr. Hewitt, was the Court advised in cases numbers 30650 and 30658 in the Circuit Court of the State of Oregon for Marion County of the then defendant's previous felonies record?"

We held in *Castle v. Gladden,* supra, that such knowledge in no way affects the jurisdiction of the court to pass sentence in a subsequent habitual criminal proceeding. Apart from that, there was no offer of proof. The question called for a mere conclusion of the witness, and the record fails to show that he would be able to give competent testimony upon the subject. The assignment of error is without merit.

It follows from the views hereinabove expressed that the judgment of the Circuit Court must be reversed, and it is ordered that the plaintiff is entitled to a writ of habeas corpus, but that its issuance be stayed for a period of 30 days to afford the proper state officers opportunity to have the plaintiff returned to the Circuit Court for Marion County for sentence in accordance with law.