Argued November 20, 1957, affirmed April 16, 1958

# LANDRETH *v.* GLADDEN

324 P. 2d 475

*Peter S. Herman,* Assistant Attorney General for Oregon, of Salem, argued the cause for appellant. With him on the brief was Robert Y. Thornton, Attorney General for Oregon.

*Merlin Estep,* of Salem, argued the cause for respondent. On the brief were Hewitt & Estep, of Salem.

McALLISTER, J.

This is a habeas corpus proceeding brought in the circuit court for Marion county by the plaintiff, Roy Bert Landreth, against Clarence T. Gladden, warden of the state penitentiary, as defendant. The lower court ordered the release of the plaintiff from

custody subject to certain conditions to be later noted. The defendant appeals.

It appears from the record that on May 22, 1944, Landreth was convicted in the circuit court for Polk county of larceny by embezzlement and sentenced to a term of three years. Before he was taken to the penitentiary, an information under the habitual criminal act was filed in the same court accusing Landreth of having been convicted of four felonies including the larceny conviction of May 22, 1944. Two of the prior convictions were in the federal courts for violation of the national motor vehicle theft act, hereinafter referred to as the "Dyer Act." Landreth admitted that he was the person previously convicted of the four felonies listed in the information, and on May 25, 1944, was sentenced to life imprisonment. On the same day he was confined in the penitentiary to serve that sentence.

On May 30, 1956, Landreth filed in the circuit court for Marion county a petition for a writ of habeas corpus contending that his two convictions under the Dyer Act were erroneously included in finding that he was a fourth felony offender. The writ issued and the warden filed a return to the effect that he had the defendant in custody under the life sentence of May 25, 1944. The plaintiff filed an amended traverse to which the defendant demurred.

By an order entered January 17, 1957, the court found that the two Dyer act convictions should not have been considered in determining whether Landreth was an habitual criminal and that the life sentence was void. The court overruled the defendant's demurrer and ordered the release of plaintiff from custody but stayed the release for a period of 30 days to permit the return of the plaintiff to Polk

county for the imposition of a valid sentence if demand for such proceeding was made by the state.[1]

On January 21, 1957, the warden filed his notice of appeal to this court from the foregoing order.

■ A preliminary question is presented by a motion to dismiss this appeal, which motion was denied by this court with leave to renew at the hearing. The motion was renewed and is now before us.

It appears from the motion and the exhibits attached thereto that Landreth was returned to the circuit court for Polk county and that on February 13, 1957, an order was entered by that court which in effect:

(a) vacated the life sentence of May 25, 1944;

(b) found that Landreth had been convicted in Oklahoma of rape prior to his conviction in Oregon of larceny by embezzlement;

(c) resentenced Landreth on the larceny conviction to an indefinite term not exceeding 12 years, 8 months and 20 days; and

(d) gave the prisoner credit on the new sentence for the time served under the life sentence.

With credit for time served under the life sentence, Landreth was discharged from the penitentiary on February 15, 1957. Plaintiff contends that such discharge was unconditional and renders this appeal moot.

---

[1] "That, as a matter of law, two of said four convictions were not convictions of felonies within the meaning of the habitual criminal statutes of the state of Oregon, by reason whereof said life sentence is void;
"IT IS, THEREFORE, ORDERED and ADJUDGED
"That the demurrer of the defendant be and the same is hereby overruled;
"That the plaintiff is entitled to be released from the Oregon State Penitentiary;
"IT IS FURTHER ORDERED AND ADJUDGED that the release of the plaintiff be stayed for a period of thirty days from the date hereof; that if within such period of time the state of Oregon shall make demand therefor the defendant shall surrender the plaintiff to the proper authorities for Polk County, Oregon, for further proceedings in the Circuit Court thereof, and in accordance with law; but that if no such demand be made upon the defendant within thirty days from the date hereof, at the termination of such thirty-day period the defendant shall immediately discharge the plaintiff from custody."

The appeal is not moot and the motion to dismiss the appeal was properly denied. It has been definitely settled by the carefully considered opinion by Mr. Justice BRAND in *Macomber v. Alexander*, 197 Or 685, 698, 255 P2d 164, that a prisoner discharged from custody in habeas corpus by a circuit court has not been *finally* discharged until an appeal, if taken, has been decided by this court. We quote from that opinion, as follows:

"* * * When a trial court dismisses a writ and remands the prisoner to custody, the right of appeal, is a valuable bulwark for the protection of the rights of the prisoner. When the trial court orders the discharge of a prisoner from custody, and the defendant, by appeal secures a reversal of the order, no one is deprived of a constitutional right to be at large. A remand to custody occurs only when the court of last resort determines that the prisoner never should have been discharged in the first place. No statute such as OCLA, § 11-428 should be construed to hold that a convict who receives an order of discharge to which he was never entitled is thereby freed from serving a lawful sentence. Any contention to the contrary is fallacious, and if adopted, would be disruptive of the administration of criminal justice."

In this case the notice of appeal was filed before the further proceedings were had in Polk county but that fact is not controlling. The order of a circuit court in habeas corpus discharging a prisoner from custody would not be a final discharge until (a) an appeal, if taken, has been decided by this court, or (b) the time for taking the appeal has expired.

It further appears from the recitals in its order that the circuit court for Polk county in resentencing plaintiff acted pursuant to the order of the circuit court for Marion county holding the life sentence void. If

we reverse the order entered in Marion county then all proceedings taken pursuant thereto in Polk county will also be invalidated.

We must first determine whether habeas corpus will lie in this case. This court has heretofore consistently held that habeas corpus will not lie unless the attacked judgment is void. *Garner v. Alexander*, 167 Or 670, 120 P2d 238; *Macomber v. State et al.*, 181 Or 208, 180 P2d 793; *Huffman v. Alexander*, 197 Or 283, 251 P2d 87, 253 P2d 289; *Anderson ex rel Poe v. Gladden*, 205 Or 538, 288 P2d 823; and *Smallman v. Gladden*, 206 Or 262, 291 P2d 749.

The attorney general contends that habeas corpus will not lie in this case. He points out (1) that the maximum sentence authorized for a first offender convicted of larceny by embezzlement was ten years; and (2) that because of Landreth's admitted prior conviction for rape, the court was required by § 26-2801, OCLA to sentence Landreth to a term not less than 10 nor more than 20 years. From this it is argued that, even if the Dyer act convictions were excluded, the trial court was authorized to impose a sentence of 20 years and that habeas corpus will not lie until the 20 years have been served. The attorney general relies on the general rule that a prisoner can not be discharged on habeas corpus until he has served so much of the sentence as the court had power to pronounce.

The attorney general in support of his contention cites *Ex parte Foster*, 69 Or 319, 138 P 849, where this court held that:

"The weight of precedents is to the effect that, where a court of general jurisdiction having authority over the person of a defendant and the subject matter of the charge against him imposes upon him a punishment of the kind and at the place

provided by law, nevertheless exceeding the term limited by statute, he cannot be discharged on habeas corpus until he has performed so much of the sentence as the court had power to pronounce: In re Bishop, 172 Mass. 35 (51 N.E. 191); In re Sellers, 186 Mass. 301 (71 N.E. 542); Ex parte Mooney, 26 W. Va. 36 (53 Am. Rep. 59); De Bara v. United States, 99 Fed. 942 (40 C.C.A. 194); Ex parte Davis (C.C.), 112 Fed. 139; In re Belt, 159 U.S. 95 (40 L.Ed. 88, 15 Sup. Ct. Rep. 987); In re Swan, 150 U.S. 637, 648 (37 L.Ed. 1207, 14 Sup. Ct. Rep. 225); In re O'Neill, 143 Cal. 634 (77 Pac. 660, 101 Am. St. Rep. 138); Perry v. Pernet, 165 Ind. 67 (74 N.E. 609, 6 Ann. Cas. 533); In re Petty, 22 Kan. 477; In re Nolan, 68 Kan. 796 (75 Pac. 1025); In re Butler, 138 Mich. 453 (101 N.W. 630); In re Fanton, 55 Neb. 703 (76 N.W. 447, 70 Am. St. Rep. 418); Ex parte Von Vetsera, 7 Cal. App. 136 (93 Pac. 1036); Ex parte Chase, 18 Idaho, 561 (110 Pac. 1036). In brief, where there is an excessive sentence, or the language designating the term of imprisonment is inaccurate when compared with the terms of the statute, the judgment is not void, but merely erroneous or voidable, affording no relief by habeas corpus."

In the later case of *Harlow v. Clow*, 110 Or 257, 223 P 541, this court said:

"While there is some conflict among the authorities of other states, it is well settled in this state, and supported by the great weight of authority in other jurisdictions, that an excessive sentence is valid as to that part of it which is authorized by law, and is void only as to the excess, especially whenever the valid portion of the judgment is separable from the excessive.

" 'In accordance with this view, habeas corpus will not lie to discharge a prisoner held under an excessive sentence before he has served or satisfied the authorized part of it. * * But after the authorized part has been served or

satisfied, further detention is illegal, and relief may be had by habeas corpus.' 29 C.J. 59, 60."

The injustice which may result in this and other cases from a holding that habeas corpus will not lie to correct an excessive sentence is readily apparent. If we should now hold that Landreth is lawfully imprisoned for a term of 20 years, he would be entitled to whatever credits he may have earned under ORS 421.120. The good conduct statute was amended in 1957 to allow more liberal credits and by its terms the statute operates retrospectively. Assuming that Landreth was serving a 20 year sentence and that he was given the basic good conduct credits, he could have been released on September 22, 1957. If we hold now that habeas corpus will not lie, we would have to remand the prisoner to custody under the life sentence. Under the rule of the Foster and Harlow cases, supra, he would have to serve until May 22, 1964 before he could bring habeas corpus to determine whether the power of the trial court was limited to the imposition of a sentence not exceeding 20 years. If the decision were favorable to Landreth it might then appear that if the warden had known that Landreth was serving 20 years instead of life, he would have allowed Landreth good conduct credits and recommended his release in September, 1957. By refusing to entertain habeas corpus at this time, we might condemn Landreth to serve an additional seven years after he had paid the debt exacted by the law and earned his right to liberty.

Prisoners serving life sentences as habitual criminals are not entitled to parole. ORS 144.050. Until it has been decided whether Landreth is serving a life sentence or a sentence of not more than 20 years, the parole board can not consider his case.

A refusal to entertain habeas corpus at this time

may also result in the denial to Landreth of the right to be sentenced as a second instead of a fourth felony offender. It is by no means certain that the maximum sentence of 20 years would have been imposed if the Dyer act convictions had been excluded from consideration. It is therefore apparent that whether habeas corpus will lie in this and similar cases is a matter of considerable concern.

The statutes authorizing the writ of habeas corpus are codified in ORS 34.310 to 34.730. The section which we think should weigh heavily in our consideration of this case reads as follows:

> ORS 34.670. "The plaintiff in the proceeding, on the return of the writ, may, by replication, verified as in an action, controvert any of the material facts set forth in the return, or he may allege therein any fact to show, either that his imprisonment or restraint is unlawful, or that he is entitled to his discharge; and thereupon the court or judge shall proceed in a summary way to hear such evidence as may be produced in support of or against the imprisonment or restraint, and to dispose of the party as the law and justice of the case may require."

It will be noted that the statute permits a prisoner to show either that his restraint is unlawful or in the alternative, that he is entitled to his discharge. He is not required by statute to show that the sentence is entirely void. It will be further noted that the court is directed "to dispose of the party as the law and justice of the case may require."

It is true that habeas corpus will not lie to *discharge* a prisoner held under an excessive sentence but it does not follow that habeas corpus will not lie to correct an excessive sentence. An analysis of the cases will disclose that a large number of the courts

have, in habeas corpus proceedings, granted appropriate relief in one form or another to rectify the excessive sentence and dispose of the prisoner's rights as justice required.

One of the courts holding that habeas corpus will lie to correct an excessive sentence is the New York Court of Appeals. In *People ex rel. Carollo v. Brophy*, 294 NY 540, 63 NE2d 95, the prisoner had been sentenced under the habitual criminal act to life imprisonment as a fourth offender. The court held that the sentence was excessive because a conviction of escape had been erroneously included as one of the four convictions. In answering the contention of the attorney general that habeas corpus would not lie, the court said:

"We do not agree with the Attorney-General's assertion that the relator may not invoke the writ of habeas corpus to challenge a sentence which, according to relator's claim, exceeds statutory limits. If the relator's sentence is for a term longer than authorized by statute it is not a judgment of a court of competent jurisdiction even though the sentencing court had power to try the offense and fix the penalty. (People ex rel. Tweed v. Liscomb, 60 N.Y. 559, 591. Cf. People ex rel. Kerrigan v. Martin, 291 N.Y. 513; People ex rel. Romano v. Brophy, 280 N.Y. 181, 707; People ex rel. Marcley v. Lawes, 254 N.Y. 249; The People, ex rel. v. Kelley, 97 N.Y. 212)."

The case was remanded to the trial court for further proceedings not inconsistent with the opinion, which presumably included the imposition of a valid sentence.

The supreme court of Pennsylvania has held that habeas corpus may be invoked where the record shows that an excessive sentence has been imposed. In the case of *Commonwealth ex rel. v. Smith*, 324 Pa. 73, 187 A 387, the court said:

"It is well established that sentence to imprison-

ment for a greater period than warranted by law is an illegal sentence, to correct which the prisoner is entitled to a writ of habeas corpus: Com. v. Ketner, 92 Pa. 372; Com. v. Morgan, 278 Pa. 395; Com. v. Curry, 285 Pa. 289; Halderman's Case, 53 Pa. Superior Ct. 554; Com. v. McKenty, 80 Pa. Superior Ct. 249. In such case, however, the petitioner will not be discharged, but remanded to the court below for proper sentence: Halderman's Petition, 276 Pa. 1; Com. v. Curry, supra."

See also *Com. ex rel. Tiscio v. Burke*, 173 PaS 350, 98 A2d 760.

In *State ex rel. Medley v. Skeen*, 138 W. Va 409, 76 SE2d 146, the prisoner had been given a life sentence under the habitual criminal act and the court held that 32 years was the maximum sentence which the lower court was authorized to impose. The court said:

"A writ of habeas corpus cannot be substituted for a writ of error. Hence, we cannot, and do not consider any errors in the four convictions of petitioner, the time for the allowance of the writ of error having long since elapsed. A proceeding in habeas corpus is the proper method of testing the legality of petitioner's confinement. If void, the writ will lie. Nutter v. Mace, 130 W. Va. 676, 44 S.E.2d 851. *Moreover, the sentence of imprisonment if valid in part and void in part, and the sentence is severable, the judgment of sentence may be reviewed and corrected in a habeas corpus proceeding.* Ex Parte Mooney, 26 W. Va. 36, 43; Dye v. Skeen, 135 W. Va. 90, 62 S.E.2d 681." (Italics supplied)

The supreme court of California, in two cases decided December 3, 1946, *Ex parte Seeley*, 29 Cal2d 294, 176 P2d 24 and *Ex parte McVickers*, 29 Cal2d 264, 176 P2d 40, held that habeas corpus was the proper proceeding to determine whether a prisoner was serv-

ing an excessive sentence imposed under the habitual criminal act. The court made the statement that section 1484 of the Penal Code "precludes the court from refusing to dispose of the prisoner's rights as the justice of the case may require." Section 1484 of the California Penal Code is similar to ORS 34.670 quoted above, and the material portions are in identical language.

In the later case of *Ex parte Chapman*, 43 Cal2d 385, 273 P2d 817, decided September 8, 1954, the supreme court of California extended to other cases the rule applied in *Ex parte Seeley*, supra, to habitual criminal cases. The prisoner had been convicted on one count of robbery and one count of assault with force and the trial court ordered that the sentences run consecutively. The petitioner brought habeas corpus contending that the two counts were different statements of the same crime and that the sentence on the second count was invalid. The court held that the fact that the prisoner had not completed an admittedly valid sentence on one count of the indictment would not preclude him from maintaining habeas corpus where he did not seek immediate release but only a determination that his conviction under the second count was invalid and should not be considered in fixing his term of imprisonment or determining his eligibility for parole. The attorney general demurred to the petition on the ground that since petitioner had not served the admittedly valid portion of his sentence, the petition stated no grounds for relief. In disposing of this contention, the court said:

"* * * The demurrer is not well taken on that ground; petitioner does not seek release now; he seeks to have the assertedly invalid judgment on count III removed from consideration by the Adult

Authority as one basis for its action in fixing his term of imprisonment and eligibility for parole. (See In re Seeley (1946), 29 Cal.2d 294, 302-303, 176 P.2d 24; In re McVickers (1946), 29 Cal.2d 264, 281, 176 P.2d 40)."

The supreme court of Florida has not hesitated to take original jurisdiction in habeas corpus to set aside life sentences improperly imposed on habitual offenders and to dispense justice as the circumstances required. In *Reed v. Mayo*, 61 So2d 757 (Florida), the prisoner was sentenced to life imprisonment as a fourth felony offender. The court held that the life sentence was excessive but that the prisoner could have been lawfully sentenced to 20 years. The prisoner had served 17½ years but instead of remanding the prisoner to serve the remainder of the valid portion of the sentence, the court gave the prisoner credit for "gain time for good behavior" and released him from custody. See also *Montgomery v. Mayo,* 61 So2d 756 (Florida) and *Smith v. Mayo*, 63 So2d 510 (Florida).

The criminal court of appeals of Oklahoma has also held that habeas corpus is the proper remedy to correct an excessive sentence. See *Ex parte Custer*, 88 Okla Cr. 154, 200 P2d 781 and *Ex parte Smith*, 95 Okla Cr 370, 246 P2d 389.

In addition to the foregoing authorities there are numerous cases in which the courts, although holding that habeas corpus will not lie to *discharge* a prisoner, have nevertheless disposed of the rights of the prisoner as the justice of the case required. Illustrative of this class of cases is *Ex parte Chase*, 18 Ida 561, 110 P 1036 which was cited by this court in *Ex parte Foster*, 69 Or 319, 138 P 849. The supreme court of Idaho held that a person in custody under an excessive sentence was not entitled to a discharge until he has served so

much of the sentence as was within the power of the court to impose. The court, however, decided the merits of the controversy and granted effective relief. The prisoner had been sentenced to a term of from five to fifteen years under an indeterminate sentence law which did not apply to felonies committed prior to the effective date thereof. As the law existed at the time the crime was committed, the minimum penalty was five years and the maximum extended to life. The court held that only the minimum portion of the sentence was valid and said:

"* * * that until the prisoner has served his term of five years, which may be shortened under the statute by good behavior, he would not be entitled to be discharged on habeas corpus."

It will be noted that the court did not remand the prisoner to serve either a life sentence which the trial court was authorized to impose or the fifteen years that the trial court did impose. Neither did the court decline to consider the petitioner's claim until he had served the valid portion of his sentence. The rule that habeas corpus will not lie to discharge a prisoner was not permitted to interfere with the prompt dispensation of justice.

A similar case is *McElhaney v. Fenton*, 115 Neb 299, 212 NW 612 in which the prisoner was sentenced to not less than 20 years for the crime of burglary. The supreme court of Nebraska held that ten years was the maximum sentence which the trial court was authorized to impose. Although the court said that habeas corpus would not lie on behalf of a prisoner on the ground that the sentence imposed on him was excessive, it obviously meant only that habeas corpus would not lie to discharge the prisoner. The court

disposed of the prisoner's rights as justice required in the following language:

"The court was vested with jurisdiction, and the judgment is valid for the term authorized by the statute, to wit, not more than ten years, *and after that becomes, and will be inoperative.* Error was not committed by the trial court in disallowing the writ and remanding the relator." (Italics supplied)

It will be noted that the court did not remand the prisoner without any indication as to the validity of his sentence but granted complete and effective relief by expressly holding that ten years was the maximum term which the prisoner was required to serve.

Other habeas corpus cases in which the courts have refused to discharge the prisoner but have nevertheless decided whether or not the sentence was excessive are *Harlow v. Clow,* 110 Or 257, 223 P 541; *Gozovich v. Sullivan,* 7 Alaska 197 (1924); *Wallace v. White,* 115 Me 513, 99 A 452; *White v. State,* 214 Miss 235, 58 So2d 510; *Ex parte Richards,* 150 Mich 421, 114 NW 348.

The foregoing review of authorities, although by no means exhaustive, demonstrates that there is sound precedent approving the use of habeas corpus to correct excessive sentences before the valid portion of the sentence has been served, especially where the failure to correct the sentence may result in substantial injustice. Numerous cases have repeated the rule that a prisoner serving an excessive sentence may not be discharged on habeas corpus but we have found few cases in which the courts have refused to determine whether the sentence imposed was excessive and to grant relief in some form. Those cases include *Smith v. Hollowell,* 209 Iowa 781, 229 NW 191; *True v.*

*Edmondson,* 179 Kan 22, 293 P2d 264; *In re Taylor,* 7 SD 382, 64 NW 253; and *McDorman v. Smyth,* 187 Va 522, 47 SE2d 441. Two courts have refused to entertain habeas corpus to discharge a prisoner held under an admittedly excessive sentence, although the valid portion of the sentence has been fully served. See *Birns v. Sweeney,* 154 Ohio 137, 93 NE2d 563 and *Thompson v. Harris,* 106 Utah 32, 144 P2d 761.

The rule followed in the Foster and Harlow cases has been impaired if not rejected by this court in *Cannon v. Gladden,* 203 Or 629, 281 P2d 233. In that case this court in a habeas corpus proceeding granted relief from an excessive sentence before the valid portion thereof had been served. The prisoner Cannon was given a life sentence under a statute which authorized either life imprisonment or a term of not more than 20 years for an *attempt* to commit rape when another statute authorized a maximum of 20 years if the crime was actually committed. The court held that the portion of the statute authorizing life imprisonment for an attempt to commit rape was void and that the life sentence imposed on Cannon was invalid. It was further held that the prisoner was entitled to a writ of habeas corpus but the issuance thereof was stayed to enable the state to produce the prisoner in the trial court for the imposition of a lawful sentence. The trial court was directed to allow the prisoner "any credits for good behavior to which he may be entitled."

By stating only that the life sentence was invalid, the court in the Cannon case left some doubt as to whether it considered the life sentence void or merely voidable. It is clear that the sentence, if void, was void only to the extent that it required the imposition of a lawful sentence. It is also. clear that the court re-

jected the rule that habeas corpus would afford no relief until the prisoner had served that portion of the sentence which the court was authorized to impose. Both the Foster and Harlow cases were cited by the attorney general in the Cannon case in support of the same contention made here, namely, that habeas corpus is not an available remedy.

The course adopted in granting relief from an excessive sentence to Cannon had been charted in *Little v. Gladden*, 202 Or 16, 273 P2d 443. In that case a life sentence imposed on Little was held void because it was imposed for the nonexistent "crime" of being an habitual criminal when it should have been imposed as an enhanced penalty for one of the specific crimes of which the prisoner had been convicted. It was held that the prisoner was entitled to a writ of habeas corpus but its issuance was stayed to permit the state to return the prisoner to the trial court for sentence in accordance with law. Although the sentence in the Little case was declared void, it was made clear that the invalidity extended only to the sentence and not to the conviction. The court said: "Although the sentence is void, all the proceedings leading up to it are valid." After referring to the similar conclusion reached by the supreme court of Washington in several cases, this court quoted with approval the following portion of the opinion of Mr. Justice Field in *In Re Bonner*, 151 US 242, 260, 14 S Ct 323, 38 L ed 149:

> "* * * The judges of all courts of record are magistrates, and their object should be not to turn loose upon society persons who have been justly convicted of criminal offences, but, where the punishment imposed, in the mode, *extent*, or place of its execution, has exceeded the law, to have it corrected by calling the attention of the court to such excess." (Italics supplied)

Other courts have held, as this court held in *Cannon v. Gladden,* supra, that an excessive sentence is void, not to the extent that it permits the discharge of the prisoner, but to the limited extent that it requires the imposition of a valid sentence. It is difficult to find any difference in substance between such a holding and a holding that an excessive sentence is only voidable. The difference would seem to be one of form rather than one of substance, and in any event, has not affected the result. Whether they hold that the sentence is void or voidable, all of the cases cited agree that the prisoner should not be discharged but that a lawful sentence should be imposed.

The reason is obvious for discarding the rule that habeas corpus will not lie until the prisoner has served so much of the sentence as the court had power to impose. That rule was satisfactory in a day when the sentence imposed by the court was served in full. In this day of more enlightened penology, the rule will not work. It fails to take into consideration the modern usages of the indeterminate sentence, the fixing of the term by trained penologists after a study of the prisoner, the good conduct statutes and the more liberal use of supervised parole and probation.

If to protect human rights it is necessary to adopt procedural changes we should not hesitate to do so. The technical distinction between void and voidable should not be a shibboleth to separate those to whom justice may be denied.

■ We therefore hold that when the sentence imposed exceeds the term limited by statute, the judgment is not void but merely voidable. We further hold that habeas corpus will lie to set aside a sentence voidable because in excess of the power of the court to impose. In such cases the prisoner should not be discharged

but should be remanded to the trial court by which the sentence was imposed for the imposition of a lawful sentence. We overrule our prior decisions insofar as they hold that no relief from an excessive sentence will be afforded in habeas corpus until the prisoner has served so much of the sentence as the court had power to impose.

■ The rule adopted here applies only to a defect in the sentence—the extent, mode or place of imprisonment—and as to the conviction, leaves unimpaired the general rule that habeas corpus will not lie unless the attacked judgment is void.

We must next decide whether the two Dyer convictions could properly be counted as previous convictions under our habitual criminal act. The pertinent section in effect in 1944 when Landreth was sentenced to life imprisonment read as follows:

> § 26-2803, OCLA. "A person who, after having been three times convicted within this state of felonies or attempts to commit felonies, or, under the law of any other state, government or country, of crimes which, if committed within this state would be felonious, commits a felony within this state, shall be sentenced, upon conviction of such fourth, or subsequent, offense, to imprisonment in a state prison for the term of his natural life."

It will be noted that under this statute the prior conviction under the laws of another state, government or country must have been of a crime which if committed in this state would be a felony.

The Dyer act was enacted in 1919 (41 Stat. 324) and during the period involved in this case the pertinent portions thereof read as follows:

> "Sec. 3. That whoever shall transport or cause to be transported in interstate or foreign commerce

a motor vehicle, knowing the same to have been stolen, shall be punished by a fine of not more than $5,000, or by imprisonment of not more than five years, or both.

"Sec. 4. That whoever shall receive, conceal, store, barter, sell, or dispose of any motor vehicle, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be punished by a fine of not more than $5,000, or by imprisonment of not more than five years, or both."

Section 3 quoted above is now contained in § 2312 and § 4 in § 2313, Title 18, USCA. Both sections have been amended in minor particulars not material here. Both of Landreth's convictions were under the third section of the Dyer act, which for convenience will be referred to herein as "section 2312."

It is conceded that an essential element of the crime prohibited by section 2312 is transportation in interstate or foreign commerce. It is thus apparent that the crime could not be committed within this state. We do not have a counterpart of section 2312 making it a felony to transport a motor vehicle within this state with knowledge that it has been stolen. It is argued that under § 115-122, OCLA [2] possession in Oregon of a stolen vehicle with knowledge that it has been stolen is a felony and that possession as used in § 115-122, OCLA is the equivalent of transportation as used in the Dyer act. We are asked to construe our

[2] § 115-122, OCLA. Any person who shall knowingly make any false statement of a material fact, either in his application for the certificate of title herein provided for, or in any assignment thereof, or who, with intent to prosecute or pass title to a motor vehicle, which he knows, or has reason to believe, has been stolen, shall receive or transfer possession of the same from or to another, or who shall have in his possession any motor vehicle which he knows, or has reason to believe, has been stolen, and who is not an officer of the law engaged at the time in the performance of his duty as such officer, shall be deemed guilty of a felony and, upon conviction thereof, shall be punished by a fine of not more than $1,000 or by imprisonment in the Oregon State Penitentiary for a period of not more than 10 years or both, at the discretion of the court.

act to mean that if the foreign conviction includes any act, as distinguished from the crime itself, which if committed in this state would be felonious, then the foreign conviction should be included as a prior conviction under our habitual criminal act.

We are not inclined to extend the habitual criminal act by implication and are persuaded to this conclusion in part by the legislative history of this act. § 26-2803, OCLA was repealed by Oregon Laws 1947, ch 585 and replaced by § 3 of the 1947 act which provided that conviction of any felony within or without this state by a state or federal court should be included as a prior conviction under our habitual criminal act. Under this act, conviction of a felony in another state or in a federal court would be included regardless of whether the crime if committed in Oregon would be felonious. Under this act a conviction under section 2312 of the Dyer act would clearly be included as a prior conviction under our act.

The 1947 act was repealed by Oregon Laws 1955, ch 663 and the statute restored to its original form. ORS 168.021. If we now adopted a construction consonant with the 1947 act, we would be ignoring the apparent legislative intent in restoring the act to its original and more restricted form.

Insofar as we are advised, the question presented here has been considered in only two other states. It first arose in *People v. Sassone,* 12 NYS2d 473, where the prisoner was given an enhanced penalty because of a prior conviction under the Dyer act which he contended should not have been considered. The court held that a Dyer act conviction for transportation would not constitute the defendant a second offender under the New York habitual criminal act.

The question was again considered in *People v.*

*Martin,* 183 Misc 790, 50 NYS2d 388, aff'd 268 app div 1077, where the facts were squarely in point with the case at bar. The New York habitual criminal act contains the identical language found in § 26-2803, OCLA. The prisoner had been convicted under § 2312 of the Dyer act. The state relied on a New York statute containing the same language as § 115-122, OCLA, making possession of a motor vehicle with knowledge that it had been stolen a felony. The court said:

"For § 70, subdivision 9, of the Vehicle and Traffic Law above quoted makes no reference to transporting a stolen motor vehicle but is limited to possession only, and concededly the transportation across the state line which gives rise to the federal offense is not a crime within the state law. Section 1941 uses the language 'of a crime which, if committed, within this state, would be a felony.' Thus we have a situation where the crime could not be committed within this state."

The court suggested an appeal to the appellate division which was taken and the case affirmed without opinion.

In the later case of *People v. Morgan,* 60 NYS2d 774, 270 App Div 859, the distinction between the two sections of the Dyer act was recognized and it was again held that conviction under the second section was a crime which if committed in New York would have been a felony.

A result contrary to the New York case was reached in *People v. Fitzwater,* 5 Cal App2d 187, 42 P2d 1044. That case involved an enhanced penalty for petit theft if the person convicted had been previously "convicted of any felony either in this state or elsewhere." It was held that § 2312 of the Dyer act denounced the same general conduct or acts as § 146 of the California Vehicle Act and that a prior Dyer act conviction should be considered to enhance the penalty.

The Fitzwater case was distinguished in *People v. Lohr*, 28 Cal App2d 397, 82 P2d 615, where it was held that because of the restrictive language of the California habitual criminal act, a conviction under § 2312 of the Dyer act could not be used as a basis for an adjudication of habitual criminality.

■ In construing the habitual criminal act, we are inclined, as was the New York Court of Appeals in *People v. Brophy,* supra, to adopt "that construction which operates in favor of life or liberty." *Commonwealth v. Martin,* 17 Mass 359, 362. It was pointed out in *Castle v. Gladden,* 201 Or 353, 270 P2d 675, that our legislature in enacting § 26-2803, OCLA adopted the exact language of the New York habitual criminal act. In *Little v. Gladden,* supra, this court said:

> "We took our Habitual Criminal Act from the Baumes Laws of New York, and therefore the decisions of the New York court construing the law have more than ordinarily persuasive force with this court."

■ We conclude that the learned circuit judge correctly held that the Dyer act convictions were improperly included in sentencing Landreth as a fourth felony offender.

Since the prisoner has already been remanded and a lawful sentence imposed, no further action is necessary.

Affirmed.

BRAND, J. dissents.

KESTER, J., resigned before this decision was rendered.

SLOAN, J., did not participate in the consideration or decision of this case.