Submitted May 19, reversed July 6, 1960

# STATE OF OREGON *v.* GRINOLDS
### 353 P. 2d 851

Elliott B. Cummins, McMinnville, filed a brief for appellant.

James E. Craig, District Attorney, McMinnville, filed a brief for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

SLOAN, J.

This case involves the habitual criminal act. ORS ch 168. The defendant appeals from a judgment imposing on him a ten year sentence permitted by ORS 168.031 which provides the penalty for one convicted of a fourth felony. Prior to conviction in the instant case the defendant was convicted of three crimes in Minnesota. The trial court found that these were crimes which, if committed within this state, would have been felonious. The judgment of the trial court is challenged by this appeal.

It is the settled law of Oregon that conviction of a crime in another "state, government or country"

cannot be considered in applying the enhanced penalty provided under the Oregon habitual criminal act unless the foreign conviction is for a crime that would be a felony if committed within this state. ORS 168.031; *Landreth v. Gladden*, 1958, 213 Or 205, 324 P2d 475. The *Landreth* case also holds that we are inclined to "adopt 'that construction which operates in favor of life or liberty.'" 213 Or at p 227.

■ Two of defendant's convictions in Minnesota were for the commission of a crime designated as "Burglary; third degree." Minn Stat Anno § 621.10. The statute provides:

> "Every person who, with intent to commit a crime therein, shall break and enter a building, or any part thereof, or a room; or,
> "Being in any building, shall commit a crime therein, and shall break out of the same—
> "Shall be guilty of burglary in the third degree, and shall be punished by imprisonment in the state prison for not more than five years."

The Supreme Court of Minnesota has declared the minimum allegation necessary to support a conviction of third degree burglary:

> "It was not necessary to allege in the indictment that there were any goods in the warehouse at the time of breaking and entry thereof which could be the subject of larceny. A breaking and entering the building with intent to steal chattels therein completes the offense, even if there be at the time in fact no goods in the building. If the defendant supposed that there were goods in the warehouse, and broke and entered it with the intent to steal them, the fact that he was mistaken in his belief does not lessen the criminal intent with which he did the act. 'The sting of the crime is, in short, the guilty purpose, without reference to the possibility of accomplishing it in any given instance.' [Cita-

tions]" *State v. Golden*, 1902, 86 Minn 206, 90 NW 398, 400.

Our statutes do not separate burglary into degrees or kinds. Instead, the legislature has classified burglary into "Breaking and entering dwelling," ORS 164.-230, and "Breaking and entering structure other than dwelling." ORS 164.240. The Minnesota convictions involved in the instant case had nothing to do with a dwelling house as defined by ORS 164.010. We will, therefore, be concerned only with ORS 164.240. It reads:

"Breaking and entering structure other than dwelling.

"Any person who breaks and enters any building within the curtilage of any dwelling house, but not forming a part thereof, or breaks and enters any building or part thereof, booth, tent, railroad car, vessel, boat, or other structure or erection in which any property is kept and which is not a dwelling house, with intent to steal or to commit any felony therein, is guilty of burglary and shall be punished upon conviction by imprisonment in the penitentiary for not more than 10 years. [Amended by 1959 c. 99 § 1]"

■ This court has held that a nondwelling burglary in Oregon can be committed only by entering one of the kinds of structures specified in ORS 164.240 wherein there is *property*. *State v. Kemano*, 1946, 178 Or 229, 232, 166 P2d 472; *State v. Luckey*, 1935, 150 Or 566, 570, 46 P2d 1042. The Minnesota statute contains no requirement that property be in the building entered, and the courts have held, as set out, that only a guilty intent is required. In other words, the material requirements of pleading and proof within the Minnesota statute would be insufficient to sustain a conviction of a felony in Oregon. The two prior convictions of

this defendant in Minnesota for burglary should not have been counted as crimes that would have been felonies in Oregon. The omission of the property requirement from the Minnesota statute was not called to the attention of the distinguished trial judge, nor argued here. Substantial loss of personal freedom requires us to notice the deficiency. We must also recognize that if we do not now consider this question, the subject could be raised in a post conviction proceeding. There is no need to thus delay a necessary decision.

The third conviction in Minnesota was for the crime of larceny. To decide if this Minnesota conviction would have been a felony in Oregon we are required to consider the question presented to the trial court. That question can be simply stated: Will this court follow the rule applied by the New York Court of Appeals in *People v. Olah*, 1949, 300 NY 96, 89 NE2d 329, 19 ALR2d 219, to the New York habitual criminal act? That decision was a crucial one in this limited area of the criminal law.

As a preface to consideration of the *Olah* case we will say that the decision has received both thoughtful and critical analysis in case notes found at 25 N Y U L R 653 (1950); 63 Harv L R 1448 (1950); 16 Brooklyn L R 273 (1950); and 32 Or L R 52 (1952). The criticism is primarily based upon the practical consequences of the result reached by the decision rather than directed at the limited point of law decided by the case.

In *Olah* the court had for review, in an habitual criminal proceeding, a prior conviction in New Jersey of a defendant named Olah. Olah had been convicted in New Jersey of the crime of larceny. The New Jersey statute, which Olah had been convicted of violating, defined the crime as the theft of money or of "personal goods" having a value "of or above twenty

dollars." To constitute a similar crime in New York the value of the money or goods stolen must have exceeded one hundred dollars. The problem arose because the New Jersey indictment to which Olah had plead guilty alleged that he had "stolen a watch and a wallet containing $200, 'all of the value of over Twenty Dollars'." 300 NY at p 98. The majority of the court of appeals held that the allegation that he had stolen a wallet containing $200 was surplusage and would not be considered in deciding if the crime charged would have been a felony in New York. Some of the pertinent language of the opinion is:

"The circumstance that Olah pleaded guilty to an indictment which recited that the items stolen were worth over $200 is entirely immaterial insofar as section 1941 [New York habitual criminal statute] is concerned. It is the statute upon which the indictment was drawn that necessarily defines and measures the crime. There is a difference between the 'crime' of which a defendant was convicted and the 'evidence' relied upon to establish that crime. And, by the same token, there is a difference between the 'crime' of which he was convicted and the 'act' which he may have committed. In other words, the crime, i.e., the operative facts which constitute the criminal offense as defined by the statute, cannot be extended or enlarged by allegations in the indictment or by evidence at the trial. Expressed somewhat differently, facts not specified in the statute upon which the indictment is based may not be rendered material or operative by merely stating them in the indictment— * * * * * * * *

"* * * As the trial court would in such a case instruct, the jury would be warranted in adjudging Olah guilty of the crime charged if it found that he had stolen $20 or more. (See, e.g., *People v. McCallam, supra*). Obviously, then, had there been a trial, the verdict—and the ensuing judgment—

would have signified only (1) that Olah had stolen money or property and (2) that the amount involved was at least $20. * * *" 300 NY 96, 98, 89 NE2d 329, 19 ALR2d 219.

Criticism of the majority opinion, by both the dissenting opinion in the case and the law review case notes mentioned is based upon the fact that in 45 states larceny of a sum less than $100 would be a felony. They suggest, by example, that even if the amount stolen in another state would be a million dollars, the conviction would not have been a felony in New York.

We think the criticism of the *Olah* decision is not well taken. The court therein was merely pointing out that the essential charges in an indictment to constitute a felony in a foreign jurisdiction must be sufficient to charge a felony in the state of New York. Specifically, all that was necessary in the state of New Jersey was to allege and prove that the defendant stole property of a value of $20. Thus, an allegation and proof of the stealing of $200 was unnecessary to constitute the crime in that state. The New York court was not in a position to determine whether Olah had plead guilty because he had stolen $20 or $200. And had he been found guilty after a trial by jury, the court of a foreign jurisdiction would not know whether the jury found he had stolen $20, $30, $40 or $200, since it was sufficient for conviction if $20 were the sum.

■ Therefore, the nonessential allegations, in any form they may take, should not be considered in defining the crime committed in another jurisdiction. Only those allegations that are material—that would require proof to convict—shall be considered.

This view of the *Olah* case is supported by a unani-

mous decision of the same court in *People ex rel Gold v. Jackson*, 1959, 5 NY2d 243, 183 NY Supp2d 799, 157 NE2d 169, 170:

> "The rationale of Olah does not license the courts below, in sentencing recidivists, to disregard the indictment or information upon which a conviction in a sister State is based in determining whether the crime charged therein constitutes a felony in New York. The intent and spirit of the Olah rule require that the courts of New York abstain from considering the surplusage contained in the indictment or information which would spell out a felony under our penal statutes. Only those facts alleged in the indictment or information which are not *operative* or *material* under the applicable criminal statute of the foreign jurisdiction are to be discounted in ascertaining whether the crime charged is to be deemed a felony in New York." [Emphasis supplied] 5 NY2d 245.

■ The Oregon habitual criminal statutes are taken from New York. The decisions of its courts in respect thereto are of more than usual persuasion. *Landreth v. Gladden, supra.*

The rule we subscribe to is actually not new. The result reached in the *Landreth* decision conforms to the rule followed by the New York Court of Appeals. Landreth had been sentenced as an habitual criminal. One of the crimes counted against him was a conviction of violating the national motor vehicle theft act, commonly known as the Dyer Act. 41 Stat 324. Section 3 of the Dyer act made it a felony to transport a motor vehicle in interstate commerce knowing the same to have been stolen. Section 4 of the same act imposed the same form of penalty upon one convicted of receiving, concealing, etc., a motor vehicle which had been a part of or constituted interstate commerce "knowing the same to have been stolen." The opinion

by this court, written by Mr. Justice McAllister, recites that § 3 of the Dyer act requires interstate transportation and, therefore, such a crime has no "counterpart" in Oregon. It had been argued by the state, however, that transportation was the equivalent of the possession of a stolen vehicle which was condemned by Oregon statute. The opinion states:

"* * * We are asked to construe our act to mean that if the foreign conviction includes any act, as distinguished from the crime itself, which if committed in this state would be felonious, then the foreign conviction should be included as a prior conviction under our habitual criminal act." 213 Or at pp 224-225.

This court refused to construe the act in the manner requested and held that the federal conviction could not have been a felony in Oregon, and therefore, would not be counted in assessing an habitual criminal penalty.

■ The application of this principle to the Minnesota larceny conviction affords illustration of our meaning. Section 622.01, Minn Stat Anno, provides that "Every person who, with intent to deprive or defraud the true owner of his property, * * * Shall take from the possession of the true owner, * * * any money, personal property, [etc.] * * * Steals such property, and shall be guilty of larceny." Section 622.06 (1) of the same code specifies that the taking of property of a value of "more than $25.00" shall be a felony. The information to which defendant had plead guilty in Minnesota charged that defendant had stolen and taken away

"* * * from the possession of N. P. Jensen and from that certain building situate at Number 107-A East Bridge Street in the City of Austin, Mower County, Minnesota, and from the rooms on

the second floor thereof occupied and used by said N. P. Jensen as a tailor shop, certain personal property, to-wit: One 22 Revolver, with knife blade attached, One Harrington-Richardson 22 Nickel-plated six inch barrel Revolver of the value of $5.00, Four leather bill-folds of the value of $10.00, Two Fountain Pens of the value of $4.75, One Elgin Gold Watch of the value of $65.00, One Gold Watch Chain of the Value of $15.00, One Elks Tooth Chain of the value of $25.00, a more particular description of which said building and of which said personal property being unknown, said personal property being then and there the property of and belonging to said N. P. Jensen * * *."

ORS 164.310 defines larceny in language similar to that of Minnesota. However, 164.310 (a) provides that the taking shall not constitute a felony unless the value of the property taken "exceeds" $75. Consequently, if this were the only Oregon statute defining larceny, we would be obliged to say that defendant's conviction of larceny in Minnesota could not be counted in imposing an habitual criminal penalty. The value stated in the information for the items alleged to have been stolen was surplusage. The defendant could have been convicted, and the conviction treated as a felony, if proof of the taking of only one or more of the items of a value in excess of $25 had been submitted.

ORS 164.310 is not the only statute defining larceny in Oregon. ORS 164.320 provides that: "Any person who commits larceny in any dwelling house, banking house, office, store, *shop* or warehouse * * * (Emphasis supplied) shall be punished by penitentiary confinement. The value of the property taken is not an element to be included in alleging violation of ORS 164.320. *State v. Reyner*, 1907, 50 Or 224, 229, 91 P 301; *State v. Hanlon*, 1897, 32 Or 95, 48 P 353. Therefore, similar allegations in an indictment filed in Oregon

would have constituted a violation of ORS 164.320 and proof of value would not have been required to sustain conviction. The crime defined by the Minnesota statute with which the defendant was charged by the information filed against him in Minnesota would have been a felony in Oregon and it was proper for the court to include that crime in this proceeding.

It should be mentioned that ORS 164.320 was amended by the 1959 legislative assembly; apparently as a part of the so-called "shop lifter" act found at ORS 164.390. The 1959 amendment to ORS 164.320 added to the penalty provided for violation of this particular section that one convicted thereof could be confined in the county jail or in the penitentiary. We need not consider the effect, if any, that the 1959 amendment would have upon this decision. The information charging the defendant with being an habitual criminal was filed prior to the date that the 1959 amendment went into effect on August 5, 1959.

When the trial judge gave his opinion in this case he expressed uncertainty as to the law and thoughtfully suggested to appointed defense counsel that the case should be appealed. The court recognized that the obligation of an appointed counsel was at an end with the conclusion of the matter in the trial court. Counsel is to be commended for his gratuitous services in bringing this appeal. We are aware of the burden frequently imposed upon appointed counsel, and all too frequently our only ability to compensate is to express the gratitude of the court for the assistance received by a careful presentation of the issues.

The judgment entered by the trial court is reversed and the case remanded with instructions to re-sentence the defendant in accordance with this opinion.