Argued and submitted March 30, 2005; resubmitted en banc July 12, on appeal,
reversed and remanded for resentencing; cross-appeal dismissed as abandoned
September 27, 2006

## STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

## ANDRE RAMON JACOB,
*Respondent - Cross-Appellant.*

### 0202-31253; A119971

145 P3d 212

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant - cross-respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Jamesa J. Drake, Deputy Public Defender, argued the cause for respondent - cross-appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, and Ortega, Judges, and Breithaupt, Judge pro tempore.

EDMONDS, J.

Breithaupt, J. pro tempore, dissenting.

**EDMONDS, J.**

The state appeals after the trial court refused to impose a 30-year gun minimum sentence pursuant to ORS 161.610(4)(c) (2001), *amended by* Or Laws 2005, ch 407, § 1. For the reasons that follow, we remand for resentencing.

The facts that frame the issue on appeal are as follows. In late 1982, defendant was convicted by a jury of robbery in the first degree. In early 1983, pursuant to the applicable version of ORS 161.610, the trial court held an evidentiary hearing without a jury and found that defendant had used or threatened to use a firearm in the commission of the crime for which he had been convicted.[1] Based on that finding, the trial court imposed a five-year gun minimum sentence, as mandated by ORS 161.610 (1981). However, just months earlier, the Oregon Supreme Court had held unconstitutional the portions of ORS 161.610 (1981) under which defendant was sentenced. *State v. Wedge*, 293 Or 598, 652 P2d 773 (1982). In *Wedge*, the court held that, under ORS 161.610 (1981), the use or threatened use of a firearm was in fact a "finding that goes to the criminal act for which [the] defendant is punished," 293 Or at 607, and, therefore, the finding of that fact by the sentencing court violated the defendant's right to trial by jury under Article I, section 11, of the Oregon Constitution. *Id.* at 608. There is no indication in the record before us that defendant raised a similar issue in connection with his 1983 conviction and sentence,[2] and defendant did not appeal or seek post-conviction relief regarding his conviction or the gun minimum sentence imposed for that conviction.

---

[1] At that time, ORS 164.415(1)(b) provided that a person commits robbery in the first degree if the person "[u]ses or attempts to use a dangerous weapon" during the commission of the crime. Also at that time, ORS 161.610 (1981), *amended by* Or Laws 1985, ch 552, § 1, required the court to hold a sentencing hearing on the issue of whether a defendant used or threatened to use a firearm during the commission of the crime for which the person was convicted unless the defendant admitted that fact or unless the conviction necessarily established that fact. Because his first-degree robbery conviction did not necessarily establish his use or threatened use of firearm, the trial court held a hearing on that issue pursuant to ORS 161.610 (1981).

[2] Although defendant was convicted by jury in 1982, judgment was entered on that conviction in 1983. We refer throughout this opinion to defendant's "1983 conviction and sentence."

In 1991, defendant was convicted again of robbery in the first degree with a firearm, as well as attempted assault in the first degree with a firearm. At the time of sentencing on those charges, the trial court imposed a 10-year gun minimum sentence pursuant to the version of ORS 161.610 in effect at that time.[3] There is no suggestion in the record before us that defendant raised an issue about the lawfulness of his 1983 gun minimum sentence during the 1991 proceedings.

In 2002, defendant was charged with two counts of robbery in the first degree with a firearm. He was found guilty of those charges in a stipulated facts trial. At sentencing, the state requested that defendant receive a 30-year gun minimum sentence pursuant to ORS 161.610(4)(c) (2001). Defendant objected, arguing that his 1983 gun minimum sentence was unconstitutional under *Wedge* and could not serve as a predicate offense under the progressive sentencing scheme in ORS 161.610 (2001). The trial court agreed with defendant and sentenced him to a 10-year gun minimum sentence. The state's appeal followed.

At the time that defendant was sentenced in this case in 2002, ORS 161.610 (2001) provided:

"(4) The minimum terms of imprisonment for felonies having as an element the defendant's use or threatened use of a firearm in the commission of the crime shall be as follows:

"(a) Except as provided in subsection (5) of this section, upon the first conviction for such felony, five years * * *.

"(b) Upon conviction for such felony committed after punishment pursuant to paragraph (a) of this subsection, 10 years * * *.

"(c) Upon conviction for such felony committed after imprisonment pursuant to paragraph (b) of this subsection, 30 years."

---

[3] The version of the statute under which defendant was sentenced in 1991 is substantially the same version that applies to his 2002 conviction.

On appeal, the state argues:

"[T]he trial court had no authority to entertain defendant's collateral challenge to his previous sentences. Under ORS 138.540(1), direct appellate review and post conviction proceedings generally provide the exclusive means for challenging a criminal sentence's 'lawfulness.' ORS 138.540(1) thus precluded the trial court from assessing the constitutionality of defendant's earlier sentences. Nothing in ORS 161.610, or in any other statutory provision, supports a contrary conclusion."

Defendant counters, that

"[t]he gun minimum statute conditions increased punishment on the imposition of previous gun minimum sentences. A defendant is eligible for a 30-year gun minimum sentence if he has previously served a 10-year gun minimum sentence; a defendant is eligible for a 10-year gun minimum sentence if he has previously served a five-year gun minimum sentence. If at any point, a sentencing court errs by unlawfully imposing a gun minimum sentence, then the use of that sentence as a predicate for imposing increased punishment both compounds the error and violates defendant's state constitutional right to a jury trial anew."

In essence, defendant argues that the 1983 conviction and sentence cannot be used to enhance his current sentence, because the 1983 sentence was constitutionally infirm.

■ The issue before us is whether ORS 161.610 (2001) permits the kind of challenge that defendant makes—*i.e.*, a challenge to the validity of the underlying conviction and sentences that establish the predicate offenses for his enhanced sentence. To resolve that question, we follow the methodology set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), in an attempt to discern the legislature's intent. Under that methodology, we first examine the text and the context of ORS 161.610 (2001); if the legislature's intent is not evident at the first level of construction, we turn to the legislative history of the statute and, if necessary, resort to other maxims of construction. *Id.*

■    The text of ORS 161.610 (2001), set forth above, does not expressly require the state to prove that the prior convictions and sentences used as predicates for the imposition of an enhanced sentence are constitutionally valid. Indeed, the legislature easily could have inserted the word "lawful" or "valid" before the word "conviction" or the word "imprisonment" in the statute, had it intended that result. Nor does the statute expressly authorize or otherwise provide a mechanism for a defendant to make such a challenge to the validity of those predicate convictions and sentences.

Although the text of ORS 161.610 (2001) is silent on the issue of challenges to the validity of predicate offenses, the broader context of ORS 161.610 (2001)—specifically those statutes that govern challenges to invalid convictions or sentences—precludes the construction of the statute urged by defendant. For example, ORS chapter 138 provides for direct appeal of and for post-conviction relief from unconstitutional sentences. Both of those remedies were available to defendant for the purpose of challenging the procedure by which his 1983 sentence was imposed. Indeed, the legislature declared in ORS 138.540(1) that post-conviction relief "shall be the *exclusive* means, after judgment rendered upon a conviction for a crime, for challenging the lawfulness of such judgment or the proceedings upon which it is based." (Emphasis added.) Thus, to construe the legislature's silence in ORS 161.610 (2001) as somehow authorizing a challenge to the constitutionality of his 1983 sentence would be inconsistent with the legislature's expressed intent that, in the absence of direct appeal, post-conviction relief is the exclusive remedy for challenging the validity of a constitutionally infirm sentence.

Furthermore, the broader historical context of ORS 161.610 (2001) provides that, once final judgment in a criminal case is entered, its validity and regularity are presumed. *Capos v. Clatsop County*, 144 Or 510, 525, 25 P2d 903 (1933); *see also State v. Young*, 122 Or 257, 263-64, 257 P 806 (1927) (holding that, unless a determination by a court in a criminal case is directly attacked, it remains the determination of the court, whether decided rightly or wrongly). Again, we decline

to interpret the legislature's silence on that issue as a departure from well-established principles of criminal law regarding the finality and conclusiveness of judgments.[4] Rather, we conclude that, when ORS 161.610 (2001) is read in the context of ORS chapter 138 and the established principle that judgments in criminal cases are presumed valid, it is clear that the legislature did not intend to allow a challenge to predicate convictions in subsequent sentence enhancement proceedings under ORS 161.610 (2001).

Our reasoning is consistent with two recent Oregon Supreme Court cases interpreting different statutory schemes involving enhancement of offenses, *State v. Probst*, 339 Or 612, 124 P3d 1237 (2005), and *State v. Sims*, 335 Or 269, 66 P3d 472 (2003). In *Probst*, the defendant attacked the constitutional validity of a predicate conviction for misdemeanor driving under the influence of intoxicants (DUII) after being charged with felony DUII. The felony DUII statute, ORS 813.010(5), makes the offense of DUII a felony if the person has been convicted previously of the same crime three times in the preceding 10 years. The defendant in *Probst* argued that, under the governing statutory scheme, the state had the burden of persuasion to demonstrate that the predicate convictions were constitutionally valid. The defendant relied chiefly on the provisions of ORS 813.328. That statute

---

[4] The purpose of ORS 161.610 (2001) is apparent from the language of the statute itself: to deter recidivism by providing enhanced punishment for repeat offenders who use or threaten to use firearms during the commission of a felony. Although the legislature may not have intended for a constitutionally infirm conviction or sentence to serve as a predicate under ORS 161.610 (2001), it addressed that potential issue by the enactment of other statutes, which, by operation of law, would correct any such infirmities in the underlying predicate convictions and/or sentences *before* those convictions and/or sentences were used for enhancement purposes under ORS 161.610 (2001). Such statutes obviate the need for a "hearing within a hearing" under ORS 161.610 (2001) to determine the validity of prior sentences. For purposes of a defendant's prior record of convictions and sentences, those issues are considered as finally determined in prior proceedings, consistent with legislative policy that judgments are to be deemed final, in order to afford certainty in the adjudication of future legal matters. Defendant's argument, if accepted, would frustrate that legislative policy by resulting in judgments that are final for some but not all purposes. Moreover, if defendant's argument were correct, it could put him in a more favorable position than that of similarly situated defendants who had successfully challenged the procedure under which they were sentenced on direct appeal or through post-conviction relief and who then were subject to resentencing with a jury empaneled to determine whether they used or threatened the use of a firearm.

requires that a defendant give notice of the intent to challenge the validity of the prior convictions at least seven days before trial and that "[t]he validity of the prior convictions shall be determined prior to trial by the court." Based on ORS 813.328, the defendant argued that, because the validity of the prior conviction had been made an element of felony DUII, the state had the burden of persuasion as it does on all elements of a criminal offense.

On appeal, the Supreme Court rejected that argument. It began its analysis by observing that "[c]ertain statutes touch on the subject of using prior convictions for DUII to enhance the possible sentence in a later case, but none suggests that the legislature has placed any burden on the state to prove the validity of those convictions." *Probst*, 339 Or at 624. It then turned to the language of ORS 813.328 and reasoned from the wording in that statute that it was intended not to be a substantive statute but a procedural statute that prescribes when and how a defendant's challenge to the validity of such a conviction is to be determined, if a defendant chooses to make such a challenge. The court concluded, "We now hold specifically that, in prosecutions for felony DUII, the existence of the predicate convictions is an element of the felony charge that the state must prove beyond a reasonable doubt, but the *validity* of the predicate convictions is not an element." *Id.* at 625 (emphasis in original).

ORS 161.610 (2001) resembles ORS 813.010(5) in that it relies on predicate convictions as the basis for enhanced punishment. Like ORS 813.010(5), ORS 161.610 (2001) does not suggest that the validity of prior convictions is an element that the state must prove. However, in determining whether such a requirement otherwise was intended by the legislature, the *Probst* court found evidence of that intention in ORS 813.328. That statute provided by its express terms that the prior predicate convictions could be challenged through a pretrial process. The availability of that statutory procedure led the court to conclude that an uncounseled conviction could be challenged under ORS 813.328. 339 Or at 627.

In contrast to *Probst*, the court in *Sims* found no indication that the legislature intended that a challenge to a

predicate conviction could be made. The defendant in *Sims* was convicted of felony driving while revoked. The issue was whether an underlying habitual traffic offender order, a predicate to the felony driving while revoked conviction, was susceptible to challenge in the subsequent proceeding. Seeking to ascertain the legislature's intention in that regard, the court observed that the statute required the state to prove only that the relevant agency had revoked the defendant's driving privileges based on his habitual traffic offender status and that he drove a motor vehicle when the revocation order was in effect. The court concluded that "[a] criminal defendant's ability to attack collaterally the validity of an underlying suspension or revocation order must arise from the legislature's intent to permit such an attack" and rejected the defendant's challenge in the absence of any statute authorizing such an action. 335 Or at 275.

This case is like *Sims* and unlike *Probst*. In each case, the existence of one or more predicate convictions or sentences converts the instant offense into, in effect, an enhanced offense. *See* ORS 161.610 (2001); *Wedge*, 293 Or at 608; *see also Probst*, 339 Or at 625; *Sims*, 335 Or at 273. And, in each case, the legislature, in defining the enhanced offense, did not make the "validity" of the predicate convictions an element of the enhanced offense. However, in the statute at issue in *Probst*, the legislature specifically provided a procedure for challenging the validity of the predicate convictions and sentences. It did not do so in the statute at issue in *Sims* or in ORS 161.610 (2001). Mindful of the principle that this court is not authorized to insert an element into an offense or a procedure that the legislature has omitted, *see* ORS 174.010, and because we are unable to discern any language in ORS 161.610 (2001) that permits a defendant to challenge the constitutional validity of the predicate convictions required by subsection (4), we are left with the conclusion that the legislature intended defendants to have previously obtained relief on direct appeal or through post-conviction relief from any prior unconstitutional sentences. Defendant's failure to resort to either of those remedies leaves his 1983 conviction and sentence in existence in the record as a legally cognizable judgment of a conviction and

sentence for a felony having as an element the use or threatened use of a firearm. Consequently, the 1983 conviction and sentence, combined with his 1991 conviction and sentence, subject him to enhanced punishment under ORS 161.610(4)(b) and, ultimately, ORS 161.610(4)(c).

■ The dissent advances a slightly different argument from that made by defendant and adopted by the trial court, and would affirm the trial court on a "right for the wrong reason" basis.[5] Rather than focusing on the *validity* of the 1983 conviction, the dissent reasons that the 1983 conviction—valid or not—cannot serve as a predicate conviction for purposes of enhancement under ORS 161.610 (2001). The dissent focuses on the 1982 charging instrument against defendant—an instrument that did not allege as an element of the underlying crime the use or threatened use of a firearm. According to the dissent, because defendant was charged and convicted by a jury under ORS 164.415(1)(a) (relating to being "armed" with a firearm) and not ORS 164.415(1)(b) (relating to using or threatening to use a firearm), the felon[y] for which defendant was convicted in 1983 was not "a felony having as an element the defendant's use or threatened use of a firearm in the commission of the crime." 208 Or App at 96-97 (Breithaupt, J. pro tempore, dissenting). It follows from the dissent's premise that, at most, defendant could be sentenced in 2002 to a 10-year gun minimum sentence under ORS 161.610(4)(b) (2001).

The dissent's focus on the 1982 charging instrument is problematic for several reasons. First, defendant's 1991 gun minimum sentence—which is predicated on the 1983

---

[5] The dissent's invocation of the "right for the wrong reason" doctrine is inappropriate on this record. We affirm on an alternative basis only if the record would be materially the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). In this case, had defendant argued in the trial court, as the dissent does, that the 1983 and 1991 convictions were not "felonies having as an element the defendant's use or threatened use of a firearm" within the meaning of ORS 161.610—as opposed to arguing only that his 1983 conviction was constitutionally infirm—the state would have had the opportunity to make a different record regarding the nature of the 1983 and 1991 convictions.

conviction and sentence—is a final adjudication for all purposes; the dissent's reasoning necessarily undermines the conclusiveness and finality of the 1991 judgment. Second, the dissent's argument based on the 1982 charging instrument simply is not tenable when one examines the text, context, and legislative history of the statute. As noted above, the plain language of ORS 161.610(4) (2001) provides the "minimum terms of imprisonment for felonies having as an element the defendant's use or threatened use of a firearm * * *." "Such felonies," as they are described in paragraphs (a) through (c) in ORS 161.610(4), are the predicates for enhanced sentences under the statute. Contrary to the dissent's premise, there is no indication that, by amending ORS 161.610 in 1985, the legislature intended to redefine the universe of crimes that constituted "felonies having as an element the defendant's use or threatened use of a firearm"; rather, the historical context and legislative history underlying the 1985 amendments to ORS 161.610 reveal that the legislature intended to redefine who (a jury rather than the court) must find that particular element.

As noted above, defendant was sentenced under ORS 161.610 (1981) *after Wedge* had been decided, but before the legislature amended the statute in light of that decision. The dissent acknowledges that the statute was amended in response to *Wedge*, but concludes that "the statutory text indicates that sentences imposed under the pre-1985 version of ORS 161.610 and that were based on a judicial finding, and not an admission or jury finding, of use or threatened use of a firearm, are not to be counted for purposes of sentencing under the post-1985 version of the statute." 208 Or App at 88 (Breithaupt, J. pro tempore, dissenting). Respectfully, the dissent ignores the significance of *Wedge* and the nature of the legislature's subsequent amendment to ORS 161.610.

In *Wedge*, the defendant was charged and convicted by jury of two counts of first-degree robbery, among other offenses. The indictments were worded in such a way that a jury could have found that the defendant used either a knife or a firearm in the commission of the offenses, and the defendant did not admit that he used a firearm. Thereafter, the trial court determined, as part of the sentencing hearing, that, in fact, the defendant had used or threatened to use a

firearm in the commission of the offenses for which he had been convicted. The trial court therefore imposed a minimum sentence of five years. The defendant appealed, arguing that the finding by the court rather than a jury that he had used or threatened to use a firearm deprived him of his right to a jury trial on that issue under Article I, section 11, of the Oregon Constitution.

The Supreme Court hinged its analysis on the proposition that "facts which constitute the crime are for the jury and those which characterize the defendant are for the sentencing judge." 293 Or at 607 (citing *State v. Quinn*, 290 Or 383, 405-06, 623 P2d 630 (1981)). The "use or threatened use of a firearm," the court concluded, was in fact an element of the crime rather than a characterization of the defendant:

> "Although the challenged statute is denominated an enhanced penalty statute, in effect it creates a new crime. * * * The legislature cannot eliminate constitutional protections by separating and relabeling elements of a crime."

*Wedge*, 293 Or at 608. The court then reversed and remanded for resentencing, declaring that, "[u]nder the facts of this case, we hold the defendant was deprived of his constitutional right to a jury trial on the issue raised in this case." *Id.* at 609.

Thus, the key principle expressed by the court in *Wedge* was that, under ORS 161.610 (1981), the use or threatened use of a firearm is, in essence, an element of a crime which implicates the right to a jury trial for its determination. That continued to be the case *after Wedge* was decided. By codifying *Wedge*, as it purported to do,[6] the legislature did not redefine the types of felonies that could result in enhanced sentences. Instead, it amended the statute to ensure that, in all cases, a defendant had the procedural safeguard of a jury trial on that issue, if the defendant so chose.[7]

---

[6] According to the legislative history, legislators understood that the underlying bill essentially conformed the code to case law, and that the amendments were not intended to make new law. Minutes, Senate Judiciary Committee, June 14, 1985, 28. In fact, the amendments were characterized as a housekeeping measure that would bring the statute into conformity with case law. *Id.* at 27.

[7] In the 1983 version of the statute (which was identical to the 1981 version under which defendant was sentenced), subsections (3) and (4) of ORS 161.610 authorized a court to make the finding that a defendant used or threatened to use

Our understanding of the legislature's intent in that regard is further buttressed by the fact that the prior version of ORS 161.610 continued in effect—as limited by *Wedge*—for more than two years before it was amended,[8] and by the fact that the legislature considered its amendment to be a housekeeping measure to bring the statute into conformity with case law. Accordingly, in light of all of the above circumstances, there is no reason to believe that the legislature (a) intended its amendments to create an entirely new class of "felonies having as an element the defendant's use or threatened use of a firearm," or (b) intended to exclude, for purposes of future applications of ORS 161.610, those convictions that occurred *after Wedge* had been decided.[9]

In summary, we have no doubt that the legislature would have understood "felonies having as an element the defendant's use or threatened use of a firearm" to include post-*Wedge* convictions and sentences under ORS 161.610 (1981). The question, instead, reduces to whether defendant can challenge his 1983 conviction and sentence in this proceeding on the ground that his conviction and sentence were not, in fact, lawfully imposed.[10] For the reasons discussed above, we have concluded that he cannot. The legislature could have provided a mechanism for that kind of challenge

a firearm in the commission of a crime. Subsection (5) of ORS 161.610 (1983) contained the minimum terms of imprisonment for "felony convictions in which the court finds that the defendant used or threatened to use a firearm[.]" For purposes of the 1985 amendment, subsections (3) and (4) of the 1983 version were deleted; subsection (5) of the 1983 version remained intact, with the exception of language referring to the court making a finding. In place of the language referring to a court making the requisite finding, the legislature inserted the phrase "felonies having as an element the defendant's use or threatened use of a firearm in the commission of the crime * * *." Or Laws 1985, ch 552, § 1.

[8] *Wedge* was decided in 1982, before the start of the 1983 legislative session. The legislature took no action regarding ORS 161.610 in the 1983 legislative session, waiting until the 1985 legislative session to amend the statute.

[9] To illustrate its position regarding the nature of the post-*Wedge* amendment to ORS 161.610, the dissent uses the hypothetical example of a change in the required level of blood alcohol content for purposes of a predicate DUII conviction as proof of an element of felony DUII. The hypothetical is inapposite because it assumes facts different from what occurred in this case where the legislature did not redefine what felonies were subject to enhanced gun minimum sentences.

[10] While the *Wedge* court foresaw the very situation that arises in this case, *see* 293 Or at 608-09, it did not decide whether a predicate conviction under ORS 161.610 could be collaterally challenged in a different proceeding.

to a final judgment for purposes of ORS 161.610; it did not do so.

For all of these reasons, we hold that the trial court erred when it refused to consider the 1983 conviction and sentence for purposes of imposing a mandatory minimum sentence under ORS 161.610(4)(c) (2001).

On appeal, reversed and remanded for resentencing; cross-appeal dismissed as abandoned.

**BREITHAUPT, J. pro tempore,** dissenting.

In 1985, the legislature amended ORS 161.610 to provide that a person could be sentenced to a 30-year gun minimum sentence only if that person, on three separate occasions, admitted or was found by a factfinder to have used or threatened use of a firearm in the commission of a felony. Today, the majority ignores that legislative choice and instead deems defendant eligible to be sentenced to 30 years' imprisonment even though defendant was only twice found by a factfinder to have used or threatened use of a firearm in the commission of a felony.[1]

The relevant undisputed facts are as follows. The state charged defendant with two counts of first-degree robbery and with committing those crimes while using and threatening the use of a firearm. Defendant agreed to proceed with a stipulated facts trial. Based on those facts, the trial court found defendant guilty of the crimes charged. At sentencing, the state requested that the court sentence defendant to a 30-year gun minimum sentence pursuant to ORS 161.610(4)(c). In support of that recommendation, the state provided evidence of two prior gun minimum sentences that defendant had served, one from 1983 and one from 1991.

---

[1] The state also assigns error to the trial court's refusal to impose a gun minimum sentence on "counts one *and* two in this case." (Emphasis added.) Although the state did not assert thereafter in its brief that the sentencing court erred by not imposing gun minimum sentences on both counts, defendant nonetheless contends that a sentencing court may not impose multiple gun minimum sentences on convictions arising from the same criminal episode. To the extent that the state's assignment of error implicitly raised that issue, I would hold that defendant is correct. *See State v. Hardesty*, 298 Or 616, 618-19, 695 P2d 569 (1985); *see also State v. Wells*, 82 Or App 283, 285-86, 728 P2d 533 (1986). I conclude, therefore, that the sentencing court did not err when it imposed a gun minimum sentence on only one count in this case.

In the matter underlying the 1983 gun minimum sentence, defendant was charged with, among other crimes, first-degree robbery. In particular, the indictment (the 1982 indictment) identified the crime charged as follows:

"ROBBERY IN THE FIRST DEGREE

"committed as follows:

"The said defendant, on or about September 27, 1982, in the County of Multnomah, State of Oregon, did unlawfully and knowingly threaten the immediate use of physical force upon Betty Frazier, *and was armed with a deadly weapon, to-wit: a gun,* while in the course of committing theft of property, to-wit: a wedding ring, with the intent of preventing resistance to the said defendant's taking of the said property, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

(Emphasis added.) Defendant was convicted of that crime by a jury. At sentencing, the court made the following factual finding:

"The court FINDS beyond a reasonable doubt that the defendant used a firearm during the commission of [the crime,] and the court FURTHER FINDS no mitigating circumstances justifying why a minimum sentence should not be imposed."

(Emphasis in original.) On January 25, 1983, based on that finding, the court sentenced defendant to a five-year gun minimum sentence pursuant to the version of ORS 161.610 in effect at that time. In that version, the sentencing court was authorized to make the requisite factual finding that a defendant had used or threatened to use a firearm in the commission of a crime when the trier of fact had not necessarily made such a finding and when the defendant had not admitted such use or threatened use.

A few months before the court imposed the 1983 gun minimum sentence, the Oregon Supreme Court had held that the portion of ORS 161.610 under which defendant was sentenced was unconstitutional. *State v. Wedge,* 293 Or 598, 652 P2d 773 (1982) (holding that a factual finding of use or threatened use of a firearm by the sentencing court violates a

defendant's right to a trial by jury under the Oregon Constitution). Despite the ruling in *Wedge*, no one involved in the 1983 sentencing raised that issue. Moreover, defendant did not appeal his conviction or seek any post-conviction relief.

In 1991, defendant was convicted of one count of attempted assault in the first degree with a firearm and one count of robbery in the first degree with a firearm.[2] The court sentenced defendant to, among other things, a 10-year gun minimum sentence under the version of ORS 161.610 in effect at that time, apparently based on the existence of the 1983 gun minimum sentence.[3]

In the instant case, defendant was convicted of two counts of robbery. Both counts charged that defendant used and threatened to use a firearm while committing the crime. At sentencing, defendant for the first time raised the issue of whether the 1983 gun minimum sentence should count under ORS 161.610 to increase the term of his imprisonment. The court determined that the 1983 gun minimum sentence could not be used in this matter to support a 30-year gun minimum sentence. The sentencing court did, however, sentence defendant to a 10-year sentence in light of the existence of the 1991 gun minimum sentence.

## A. *The parties' arguments*

The majority holds that the plain language of ORS 161.610(4) required that, in the instant case, the sentencing

---

[2] The inclusion of the language "with a firearm" in the title of the offense for which defendant was sentenced in 1991 is and was sufficient under ORS 161.610(2) to allege use or threatened use of a firearm as an element in aggravation. *But see State v. Pies*, 104 Or App 646, 650-51, 802 P2d 702 (1990) (holding that a defendant convicted of committing a felony "with a firearm" on an aiding and abetting theory might not personally have used or threatened to use the firearm, and thus that the conviction might not count for purposes of imposing a gun minimum sentence under ORS 161.610).

[3] The judgment in that case simply sentenced defendant to 10 years in prison under ORS 161.610 (1989), without specifying which part of the statute authorized that sentence. That is noteworthy because it leaves unclear, without reference to defendant's 1983 gun minimum sentence or more information about the 1991 conviction, whether defendant was sentenced in 1991 to 10 years under ORS 161.610(4)(a) for a first use or threatened use of a "machine gun, short-barreled rifle, short-barreled shotgun, or * * * silencer" or whether defendant was sentenced to 10 years under ORS 161.610(4)(b) for a second use or threatened use of another kind of firearm. *See* ORS 161.610(1) (defining "firearm").

court impose a gun minimum sentence of 30 years. At all times relevant to the sentencing in the instant case, ORS 161.610 provided, in part:

"(2) The use or threatened use of a firearm, whether operable or inoperable, by a defendant during the commission of a felony may be pleaded in the accusatory instrument and proved at trial as an element in aggravation of the crime as provided in this section. When a crime is so pleaded, the aggravated nature of the crime may be indicated by adding the words 'with a firearm' to the title of the offense. * * *

"(3) Notwithstanding [certain provisions inapplicable in this case], if a defendant is convicted of a felony having as an element the defendant's use or threatened use of a firearm during the commission of the crime, the court shall impose at least the minimum term of imprisonment as provided in subsection (4) of this section. * * *

"(4) The minimum terms of imprisonment for *felonies having as an element the defendant's use or threatened use of a firearm in the commission of the crime* shall be as follows:

"(a) Except as provided in subsection (5) of this section [relating to a first conviction under ORS 161.610], upon the first *conviction for such felony*, five years, * * *.

"(b) Upon *conviction for such felony* committed after punishment pursuant to paragraph (a) of this subsection * * *, 10 years, * * *.

"(c) Upon *conviction for such felony* committed after imprisonment pursuant to paragraph (b) of this subsection, 30 years."

(Emphasis added.)

At sentencing and on appeal, the state argued that defendant must be sentenced to 30 years pursuant to ORS 161.610(4)(c) because defendant was imprisoned in 1991 under ORS 161.610(4)(b). The sentencing court disagreed with the state's argument in part because that court would have read ORS 161.610(4)(c) to say, "[U]pon conviction for such felony committed after *lawful* imprisonment pursuant to paragraph (b)." The state asserts that the sentencing court erred by inserting the word "lawful" into ORS 161.610(4)(c). I

agree. *See* ORS 174.010 (courts shall not insert into a statute that which has been omitted from it); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (same). To the extent that the sentencing court's determination was based on the insertion of a word into ORS 161.610, the court's reasoning was wrong.

Implicit in the sentencing court's approach, however, was the belief that defendant could make a collateral attack on the 1983 conviction and gun minimum sentence during the present sentencing proceeding.[4] Indeed, the parties' arguments to the trial court and this court revolve around the issue of whether defendant can make such a collateral attack. The parties center their debate around the applicability of the court's ruling in *State v. Stewart / Billings*, 321 Or 1, 892 P2d 1013 (1995) (discussing when parties may bring a collateral attack on prior judgments), and whether ORS 138.540 (relating to post-conviction relief) or ORS 137.079 and ORS 138.222 (relating to appellate review and correction of presentence investigation reports in criminal cases) control in this case. In particular, defendant argues that the 1983 gun minimum sentence does not count for purposes of his current sentencing because the conviction underlying that sentence was unlawful. The state, on the other hand, argues that ORS 138.540 provides that defendant may challenge the validity of the 1983 conviction and gun minimum sentence only on direct appeal or in post-conviction relief, not during sentencing under ORS 161.610. The state claims that nothing in ORS 161.610 suggests otherwise. Accordingly, the state argues that defendant cannot challenge the validity of the 1983 conviction or gun minimum sentence in this case, and that the sentencing court was wrong to agree with defendant. The majority accepts the parties' framing of the case, and, ultimately, agrees with the state.

---

[4] As the sentencing court stated, in reference to defendant's 1983 conviction, "the denial of the right to jury trial is as fundamental as the denial of the right to counsel, and, therefore, can be collaterally attacked." *See Custis v. United States*, 511 US 485, 114 S Ct 1732, 128 L Ed 2d 517 (1994) (holding that defendants have a federal constitutional right to make a collateral attack on a prior conviction only when that conviction was obtained without the assistance of counsel). As stated below, my resolution of this appeal would not require us to address that position.

I, however, believe that the proper resolution of this case does not require us to determine whether defendant can make a collateral attack on the 1983 conviction or gun minimum sentence. Instead, I would hold that, as a matter of construction of the statute under which defendant was sentenced in this matter, the 1983 gun minimum sentence (and its underlying conviction) does not count for purposes of imposing a subsequent and greater gun minimum sentence. Because I decline to address the parties' arguments, which formed the basis of the trial court's ruling, my analysis follows the "right for the wrong reason" doctrine. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining the doctrine). Although the parties, and the majority, rely on other sources of law, I invoke the law applicable to this matter. *See Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 951 P2d 720 (1998) (doing the same).

B. *The actual question to be resolved*

In *State v. Thiehoff*, 169 Or App 630, 10 P3d 322 (2000), we construed a version of ORS 161.610 that was identical to the 2001 version under which defendant was sentenced in this matter. We held that a sentence is imposed in accordance with ORS 161.610

"only when the use or threatened use of a firearm is an element of a felony conviction or is pleaded in the accusatory instrument and proved at trial as an element of an aggravated crime. Or Laws 1985, ch 552, § 1.

"* * * * *

"[*State v. ]Pies*[, 104 Or App 646, 802 P2d 702 (1990),] and *Wedge* both stand for the proposition that, if a minimum sentence is to be imposed pursuant to ORS 161.610, the finder of fact must first determine that the defendant personally used or threatened to use a firearm. That determination is reserved *exclusively* for the finder of fact. When the factfinder is a jury, the jury must explicitly make a finding in that regard or the conviction as charged must require that finding, even if that finding is not expressly made. The trial court cannot make the requisite finding of fact *post hoc*."

*Id.* at 635-36 (emphasis in original).

The version of ORS 161.610 applicable to *Thiehoff* and defendant's present sentencing is different from the version of the statute that applied to defendant's 1983 sentencing. At that time, ORS 161.610 provided that:

"(3) *Unless the conviction necessarily establishes that the defendant used or threatened to use a firearm during the commission of the crime, or unless the defendant admits on the record that he used or threatened to use a firearm during the commission of the crime,* whenever the court has reason to believe that the defendant so used or threatened to use a firearm, it shall set a presentence hearing on the matter. * * *

"(4) Notwithstanding the provisions of ORS 161.605 or 137.010(2), if the court finds beyond a reasonable doubt that the defendant used or threatened to use a firearm during the commission of the crime, it shall impose at least the minimum term of imprisonment as provided in subsection (5) of this section. * * *

"(5) The minimum terms of imprisonment for *felony convictions in which the court finds that the defendant used or threatened use of a firearm in the commission of the crime* shall be as follows:

"(a) Except as provided in subsection (6) of this section, upon the first conviction for such felony, five years.

"(b) Upon conviction for such felony committed after punishment pursuant to paragraph (a) of this subsection, 10 years.

"(c) Upon conviction for such felony committed after imprisonment pursuant to paragraph (b) of this subsection, 30 years."

(Emphasis added.)

There are two key differences between ORS 161.610 (1981) and ORS 161.610 (2001). First, the earlier version of the statute allowed for the sentencing court to make a finding of use or threatened use of a firearm in cases where the conviction did not necessarily establish that fact and the defendant had not admitted to it. The 2001 version of the statute does not allow for such a court-made finding. Instead, the required finding of use or threatened use of a firearm must be made by the jury or admitted by the defendant. Second, the

gun minimum sentences of ORS 161.610 (1981) could be imposed regardless, whether the sentencing court made the finding of use or threatened use of a firearm, or whether the jury made that finding or the defendant admitted it. In contrast, the gun minimum sentences of ORS 161.610 (2001) can be imposed only if the jury finds or the defendant admits use or threatened use of a firearm. *Thiehoff*, 169 Or App at 635-36. The key amendments to the statute occurred in 1985, following the court's decision in *Wedge*. *See* Or Laws 1985, ch 552, § 1.

Neither *Thiehoff* nor *Pies* dealt with the issue of how a sentencing court applying ORS 161.610 (2001) should treat prior gun minimum sentences imposed under ORS 161.610 (1981), when the jury did not find, and the defendant did not admit, to use or threatened use of a firearm. That is the question that must be resolved in this case. The true nature of the problem in this case is easily misperceived, but it can be illustrated with a slight modification of the facts of *State v. Probst*, 339 Or 612, 124 P3d 1237 (2005), on which the majority relies. Assume a statute with the same enhancement scheme as in *Probst*—on three convictions for driving under the influence of intoxicants (DUII) within 10 years, the third conviction is a felony. Also assume, however, that a legislative change in the description of the predicate act occurs within a given 10-year period—say a change in definition of DUII as being a blood alcohol content of 0.08 to a blood alcohol content of 0.10. Now further assume a defendant exists who has one conviction under the 0.08 statute, with a blood alcohol content of 0.09, and one conviction under the 0.10 statute. That same defendant is now convicted again of DUII under the latter statute and so has three convictions, albeit under two different statutes. Does that defendant face penalties for felony DUII? Note that the question is not of constitutional dimension; it is one of statutory construction. How is the earliest conviction, under a different statute, to be counted under the amended sentencing statute?[5]

---

[5] I recognize that the example posed relates to substantive definitions, and this case involves the procedure of conviction. That should not, however, change the result.

As to this problem of changing statutory provisions during the period of predicate offenses presented in this case, I would hold that, as a matter of statutory construction, ORS 161.610 (2001), the statute governing this proceeding, requires the sentencing court to count, for purposes of increasing a defendant's gun minimum sentence, only those prior gun minimum sentences that were based on convictions in which the jury found or the defendant admitted use or threatened use of a firearm.

## C.   Statutory construction

At issue in this case is whether ORS 161.610, in the version binding on the sentencing court in this case, permitted, or indeed required, the sentencing court to count the 1983 gun minimum sentence in the instant sentencing. In order to make that determination, we must discern the intent of the legislature. *PGE*, 317 Or at 610. I begin my analysis by considering the text and context of ORS 161.610. *Id.* at 610-11. Indeed, "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *Id.* at 610. If the intent of the legislature is clear from the text and context, no further inquiry is necessary. *Id.* at 611.

In its textual analysis, the majority focuses on ORS 161.610(4)(c), asserting that that subsection requires only that a defendant have been convicted of an applicable felony and previously imprisoned "pursuant to paragraph (b)." Neither party contests that defendant was convicted of a felony subject to ORS 161.610 in this matter and that in 1991 the court imposed on defendant a 10-year gun minimum sentence, apparently "pursuant to paragraph (b)." Accordingly, the majority reasons, the sentencing court in the present case was required to sentence defendant to a minimum of 30 years under paragraph (c). The essence of that reasoning is that a sentencing court must accord mechanical deference to a prior court's assumption that it sentenced a defendant "pursuant to paragraph (b)."[6]

---

[6] I say assumption because, as noted above, 208 Or App at 77 n 3 (Breithaupt, J. pro tempore, dissenting), the sentencing court in 1991 referred only to ORS 161.610 generally, and not to the specific subpart that authorized the imposition of a 10-year sentence. As far as can be told from the 1991 gun minimum sentence

That argument is plausible enough on its face, yet ultimately unconvincing for two reasons. First, it does not accord with the well-established legal meaning of the phrase "pursuant to." *See McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996) ("Analysis of text also includes reference to well-established legal meanings for terms that the legislature has used."). The phrase "pursuant to" means "[i]n compliance with[,] in accordance with" or "[a]s authorized by." *Black's Law Dictionary* 1272 (8th ed 2004). That meaning is uncontradicted by anything in the context of ORS 161.610. Thus, although it may be assumed that a prior gun minimum sentence was imposed in accordance with or as authorized by ORS 161.610, and therefore "pursuant to" it, in cases where the defendant concedes or fails to challenge the applicability of the prior conviction and sentence to the present sentencing, *cf. Probst*, 339 Or at 627 (stating that judgments are "entitled to a presumption of validity"), the well-established legal meaning of the phrase "pursuant to" requires more searching review in cases where the defendant, as here, challenges how a prior sentence is to be used in the present sentencing.[7] A sentencing court applying ORS 161.610(4)(c) in the face of such a challenge must determine for itself whether the prior court *actually* sentenced the defendant "pursuant to paragraph (b)," or whether the court did so in name only. This more searching review leads to the conclusion that, to have been imprisoned "pursuant to paragraph (b)," that is, "as authorized by" paragraph (b), the defendant must, in the words of paragraph (b) itself, also have been "punish[ed] pursuant to paragraph (a)." Accordingly, when the defendant challenges the propriety of his sentence, an inquiry must be made of whether the earlier sentences he received were "as authorized by" the current statute under which he is sentenced. The sentence in 1991 could be "as authorized by" the current statute only if it followed a sentence imposed under

___

alone, the sentence may also have been imposed under ORS 161.610(4)(a) on the basis of the use of a machine gun.

[7] Defendant's challenge to the applicability of the 1983 gun minimum sentence admittedly implicates not only its applicability, but also its validity, and the validity of the underlying conviction as well. I find it immaterial that defendant's challenge was broader than necessary; it was sufficient to require the sentencing court to review the 1983 gun minimum sentence.

ORS 161.610(4)(a)—that is, one involving a "conviction" for "such a felony."

The importance of that inquiry and the appropriate focus on "convictions" rather than "sentences" is illustrated by the facts of this case. The 1991 gun minimum sentence does not specify the subpart of ORS 161.610 under which defendant's 10-year sentence was imposed.[8] That sentence could have been imposed under ORS 161.610(4)(b), as the majority assumes, and as was probably the case, given the 1983 gun minimum sentence. However, it also could have resulted, after only a first conviction, from a sentence imposed under ORS 161.610(4)(a), which provides for a sentence of 10 years in cases where the defendant uses or threatens to use not just any firearm, *see* ORS 161.610(1) (defining "firearm"), but a "machine gun, short-barreled rifle, short-barreled shotgun, or * * * silencer." *See* Or Laws 1989, ch 839, § 18 (adding the language regarding machine guns, etc.).[9] Ultimately, it is impossible to tell from the 1991 gun minimum sentence alone whether defendant was sentenced in 1991 under ORS 161.610(4)(a) or (b). Yet knowing the answer to that question is important if we are to give effect to the legislature's intent. At least after the 1989 addition of "machine gun" provisions, the legislature could not have expected a sentencing court to accept the length of a prior sentence as necessarily conclusive on the question whether the defendant had been convicted once or twice before for a felony involving the use or threatened use of a firearm.[10] The text of ORS 161.610 makes clear that convictions, and not just sentences, must be layered. The statute does not allow a defendant with one prior machine gun conviction to be sentenced to 30 years in prison after a second gun conviction.

---

[8] For that matter, neither does the present sentence.

[9] My focus on the permutations of the statute involving machine guns is done to analyze the statute, and not because the record in this case demonstrates use of a machine gun.

[10] Indeed, if the 1991 sentence were to be taken at its ostensible face value, as a sentence imposed only after another sentence had been imposed "pursuant to paragraph (a)," it would have been unnecessary for the state to introduce evidence of the 1983 gun minimum conviction and sentence. Yet the state was careful to introduce evidence from the 1983 proceeding, and properly so under my reading of the statute. Once that earlier proceeding is before a court, it is not a burdensome matter to determine whether it involved a "conviction" for "such felony."

Nor does the statute allow, under any circumstances, a sentence of 30 years unless there have been two prior "convictions" for "such felonies." The majority makes no persuasive argument to the contrary.

There remains the question of how to tell whether a sentence was imposed "pursuant to" paragraphs (a) and (b) so it can be part of the layering process. To answer that question, I again examine the text and context of ORS 161.610. *PGE*, 317 Or at 610-11. The context of a statute "includes other provisions of the same statute," *id.* at 611, as well as "applicable case law interpreting those other provisions[.]" *Owens v. Maass*, 323 Or 430, 435, 918 P2d 808 (1996). As a textual matter, ORS 161.610(4) states that its sentencing provisions apply only to "felonies having as an element the defendant's use or threatened use of a firearm in the commission of the crime." Paragraphs (a), (b), and (c) of ORS 161.610(4) each mandate a gun minimum sentence only in cases involving a "conviction for such felony."

"Conviction" may mean either the finding of guilt in a given case or the judgment of conviction combining the finding of guilt with a corresponding criminal sentence. *State v. Gile*, 161 Or App 146, 150, 985 P2d 199 (1999). I understand the legislature to have intended "conviction," for purposes of ORS 161.610, to mean a finding of guilt, and not a judgment of conviction combined with a criminal sentence. That understanding is derived from the text and context of ORS 161.610, *PGE*, 317 Or at 610-11, including the legislative changes that have brought it into its present form. *State v. K. P.*, 324 Or 1, 9, 921 P2d 380 (1996). As originally enacted, the operative provisions of ORS 161.610 applied in three situations: (1) where "the conviction necessarily establishe[d] that the defendant used or threatened to use a firearm during the commission of the crime"; (2) where the defendant admitted to use or threatened use; and (3) where the court convened a special proceeding and found use or threatened use of a firearm. Or Laws 1979, ch 779, § 2. The third option, action by the sentencing judge, could only occur if, before sentencing, the judge determined that the "conviction" did not necessarily establish use or threatened use of a firearm. That order of events—"conviction" followed by sentencing—indicates that the legislature intended the term "conviction" in ORS

161.610 to mean the finding of guilt as to the underlying criminal charge, and not that finding of guilt combined with the attendant criminal sentence.[11] *Compare State v. Isbell,* 178 Or App 523, 527, 38 P3d 272 (2001) (holding that the term "conviction" means a finding of guilt and not a judgment where it refers to "an event that precedes sentencing"), *and State v. Allison,* 143 Or App 241, 246, 923 P2d 1224 (1996) (holding the same where the term "conviction" refers to "a defendant who has been found guilty of a listed offense but has not yet been sentenced"), *with Gile,* 161 Or App at 150-51 (holding that the term "conviction" means a judgment and not a finding of guilt where it refers to an award of costs). Accordingly, in applying ORS 161.610, the focus should be on what the factfinder found as to the defendant's guilt for the crime with which he was charged, and not on the product of the factfinder's and sentencing judge's actions on that question.

I must next construe the word "such" in the phrase "conviction for such felony," found in paragraphs (a), (b), and (c) of ORS 161.610(4), to determine to which felonies those paragraphs refer. I conclude that the word "such" refers back to the kind of felony described in ORS 161.610(4) ("felonies having *as an element* the defendant's use or threatened use of a firearm in the commission of the crime" (emphasis added)). *See State v. Hardesty,* 298 Or 616, 619, 695 P2d 569 (1985) (construing a prior version of ORS 161.610 that was the same as the present version on this point, and holding that the word "such" in paragraphs (a), (b), and (c) refers to the kind of felony described in ORS 161.610(4)); *Stephens v. Bohlman,* 314 Or 344, 350 n 6, 838 P2d 600 (1992) ("When [the] court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment.").

---

[11] Nothing in the 1985 changes to ORS 161.610 indicates an intent to change the meaning of the word "conviction." *See* Or Laws 1985, ch 552, § 1. After those changes, the statute retained an important feature of its original structure, *i.e.,* sentencing followed conviction. For example, in a recent change, section (6) was added, allowing the sentencing court to depart from a minimum term of imprisonment when a defendant has been "convicted of a felony having as an element the defendant's use or threatened use of a firearm during the commission of the crime" and the defendant is "a person who was waived from juvenile court" under certain statutes. Or Laws 1999, ch 951, § 3. That section again reflects a legislative view that the sentencing component comes after the underlying finding of guilt and is not encompassed in the word "conviction."

In summary, then, the text of ORS 161.610 indicates that a sentence is imposed "pursuant to" paragraphs (a) and (b) of subsection (4)—and therefore to be counted in the post-1985 version of ORS 161.610—only when it is based on a conviction that includes a jury finding or defendant's admission of use or threatened use of a firearm. Consequently, the statutory text indicates that sentences imposed under the pre-1985 version of ORS 161.610 and that were based on a judicial finding, and not an admission or jury finding, of use or threatened use of a firearm, are not to be counted for purposes of sentencing under the post-1985 version of the statute.

Those conclusions are bolstered by the statutory context. In a contextual analysis, we consider past amendments to a statute, *K. P.*, 324 Or at 9, as well as Oregon Supreme Court case law that was in place at the time of those amendments, presuming that the legislature amended the statute in light of those judicial decisions. *Owens*, 323 Or at 438. Here, it is important to understand that the court issued its decision in *Wedge* in October 1982. 293 Or at 598. That decision held unconstitutional, under the then-current version of ORS 161.610, the judge's role in finding use or threatened use of a firearm. *Id.* at 609. I understand the fundamental nature and extent of the 1985 amendments to be consistent with a legislative intent to recognize the holding in *Wedge* and require gun minimum sentences to be based only on convictions, whenever they occurred, in which the use or threatened use of a firearm was either admitted by the defendant or pleaded in the indictment and proved at trial. *See* Or Laws 1985, ch 552, § 1.

Reviewing the 1985 changes the legislature made to ORS 161.610, it is clear that the legislature primarily intended, first, to delete those provisions permitting judicial findings of use or threatened use of a firearm, and, second, to change the class of felony convictions for which gun minimum sentences would be imposed from those based on any finding of use or threatened use of a firearm, including judicial findings, to those based only on either an admission or a jury finding of use or threatened use of a firearm. *See id.* Although ORS 161.610(4)(a) through (c) remained substantially unchanged, the felonies described by ORS 161.610(4),

to which the phrase "such felony" refers, changed drastically. Before 1985, the felonies were "felony convictions in which the court finds that the defendant used or threatened to use a firearm." ORS 161.610(5) (1981). Afterwards, the felonies were "felonies having as an element the defendant's use or threatened use of a firearm in the commission of the crime." ORS 161.610(4) (1985). Had the legislature intended felonies involving court findings to count for purposes of a future sentencing, it could have retained the prior language of ORS 161.610(5) (1981). Instead, it changed the nature of the felonies to which paragraphs (a) through (c) apply with the purpose of excluding those felonies based on court findings of use or threatened use of a firearm.

That understanding is supported by the court's statement in *Wedge* that the future use of an unconstitutional conviction, *i.e.,* one in which a judge found use or threatened use of a firearm, for purposes of imposing an increased gun minimum sentence, might itself be unconstitutional. 293 Or at 608-09. Given the concern that the 1985 legislature obviously paid to *Wedge* in its revision of ORS 161.610, I believe that it meant to codify or conform to *Wedge* in all respects. That could be accomplished only if judicial findings made prior to the 1985 legislation, whether before or after *Wedge,* were discarded for purposes of sentencing under ORS 161.610. At the least, if the legislature had intended to challenge the court's statement regarding the future use of prior unconstitutional sentences, and preserve pre-1985 sentences based on judicial findings of use or threatened use of a firearm for purposes of a future sentencing under ORS 161.610, I believe the legislature would have said so. It did not.[12]

---

[12] The foregoing contextual analysis is in accord with the legislative history mentioned by the majority. The underlying purpose of HB 2082 was to conform the code to the case law. Minutes, Senate Judiciary Committee, June 14, 1985, 28. As such, the bill was merely a housekeeping measure and not new law. *Id.* at 27-28. The majority believes that those statements support its conclusion. However, the conclusion reached by the majority can only be correct if one concludes that the legislature desired to have the statute present the constitutional problem recognized in *Wedge* of counting in the sentencing calculus judicial findings of use or threatened use of a firearm. Such a challenge surely could not be considered mere "housekeeping" and would appear at odds with the declared legislative intent to conform the code to the case law.

Having analyzed the text and context of ORS 161.610, I conclude that the legislature clearly intended to count for purposes of imposing a gun minimum sentence only those prior convictions that were based on a defendant's admission or a jury's finding of use or threatened use of a firearm. I further conclude that where, as here, a defendant challenges whether a prior gun minimum sentence counts for purposes of a present sentencing, ORS 161.610 requires the sentencing court to determine for itself whether the challenged prior sentence was imposed "pursuant to" the version of ORS 161.610 in effect at the time of the present sentencing, and not any past version. That is, in order for a defendant to be sentenced to 30 years' imprisonment under ORS 161.610(4)(c), the defendant must previously have been twice sentenced under ORS 161.610 for convictions based on an admission or jury finding of use or threatened use of a firearm. As will be discussed below, defendant was sentenced only once before, in 1991, for such a conviction.

D. *Response to the majority*

The above analysis does not allow defendant to make an unauthorized collateral attack on his 1983 conviction.[13] Instead, as a matter of statutory construction, ORS 161.610 required the sentencing court, upon defendant's challenge, to inquire into the applicability to the present sentencing of the 1983 gun minimum sentence. The inquiry that I believe is called for by the statute can be made without regard to the validity of any prior conviction or sentence, or whether the defendant previously filed a direct appeal from or collaterally attacked a prior conviction or sentence that the defendant believes does not satisfy the requirements of ORS 161.610. There is, therefore, no collateral attack. *See State ex rel Costello v. Cottrell,* 318 Or 338, 343, 867 P2d 498 (1994) (defining a collateral attack as an " 'attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying the decree' " (quoting *Morrill v. Morrill and Killen,* 20 Or 96, 101, 25 P 362 (1890))). Once the sentencing court has concluded its inquiry, we may

---

[13] Indeed, I agree with the majority that defendant may not collaterally attack his 1983 conviction. However, as I ultimately conclude, it is not necessary for us to answer that question here.

review its determination under ORS 138.222(4)(a). Here, ultimately, the 1983 gun minimum sentence is inapplicable to defendant's present sentencing not because it was unconstitutional or otherwise invalid, but because it was not based on an admission or jury finding in 1983 of use or threatened use of a firearm. That element was required by the version of ORS 161.610 applicable to the present sentencing.[14]

Neither *Probst* nor *State v. Sims*, 335 Or 269, 66 P3d 472 (2003), relied on by the majority, are to the contrary. *Probst* concerned whether the *validity* of prior convictions could be assumed and held that it could. 339 Or at 625. Similarly, I conclude that the validity *and applicability* of prior gun minimum sentences can be assumed under ORS 161.610. The question in this case, not present in *Probst*, is what to do when a defendant challenges the applicability of a prior gun minimum sentence to the present sentencing, without regard to its validity.[15] *Sims* and *Bailey v. Lampert*, 203 Or App 45, 125 P3d 771 (2005), *rev allowed*, 340 Or 672 (2006), involved quasi-status offenses, in which the defendants violated statutes forbidding them from driving while their driving privileges were revoked and possessing a firearm while a convicted felon, respectively.[16] The important fact in *Sims* and *Bailey* was that the legislature was found to have chosen to consider, or layer, the status of persons at a point in time—revoked license or conviction (not final)—in the definition of the crime. At the time of their convictions, the defendants met the statutory predicates: they were under suspension or in the status of a felon. ORS 161.610 does not define a crime based on a status that is not final; rather, it

---

[14] The inquiry into the nature, not the validity, of the prior convictions is exactly as it would be under the felony DUII example used in this opinion. The first conviction, under the 0.08 statute, is valid. However, it is, by legislative decision, not layered in the sentencing process.

[15] The court also held in *Probst* that the defendant bears the burden of proving the invalidity of a prior conviction. 339 Or at 628. Similarly, under my reading of ORS 161.610, the defendant would bear the burden of proving the inapplicability of a prior sentence.

[16] In *Sims*, the court held that the defendant was not entitled to collaterally attack his underlying suspension and revocation orders. 335 Or at 275. In *Bailey*, we upheld a defendant's conviction for felon in possession of a firearm (ORS 166.270) because, even though the underlying felony conviction was later held unconstitutional, the defendant "possessed two assault firearms at a time when he stood convicted of a * * * felony." 203 Or App at 47.

involves actions—the use or threatened use of a firearm—but only when found by a jury or admitted by the defendant. Those actions can be used in this sentencing statute only when conclusively so found or admitted. I would merely hold that, upon a defendant's challenge to the applicability of a prior gun minimum sentence, the sentencing court must apply the version of ORS 161.610 in effect at the time of the present sentencing to determine whether the prior sentence was imposed following admission or jury finding of use or threatened use of a firearm, *i.e.*, after a "conviction for such felony." If the prior sentence satisfies that test, it may and must be counted by the sentencing court. However, if the prior sentence does not satisfy that test, the sentence, and its underlying conviction, although valid, cannot be counted for the special purpose of ORS 161.610.

Accordingly, I disagree with the majority's conclusion that the legislature intended prior convictions and sentences that were based on a judge's finding of use or threatened use of a firearm to count for purposes of ORS 161.610. That conclusion, as shown above, is contradicted by the text and context of the statute. The statute after 1985 makes no reference to *judicial findings* of use or threatened use of a firearm—it refers only to *convictions*. Had the legislature intended to make those prior convictions and sentences applicable to a future sentencing, it could have, for instance, amended ORS 161.610(4) to require to be counted all "felony convictions in which the court finds that the defendant used or threatened to use a firearm" *and* all "felonies having as an element the defendant's use or threatened use of a firearm in the commission of the crime." Such language would have included not only those convictions based on admission or jury finding of use or threatened use of a firearm, but also those convictions based on admission, jury finding, or a judicial finding of use or threatened use of a firearm. Other options were perhaps also available to the legislature. *See Castle v. Gladden*, 201 Or 353, 270 P2d 675 (1954) (describing how different legislative choices as to language that refers to other or earlier statutes or actions can result in different outcomes); *State v. Andre*, 142 Or App 285, 920 P2d 1145 (1996) (same). In the end, however, the legislature did

not adopt any such language that would allow prior sentences based on judicial findings of use or threatened use of a firearm to count for a future sentencing. Rather, the legislature eliminated those sentences for purposes of a future sentencing under ORS 161.610: that is, the result not of a collateral attack, but of a change in legislative policy.[17]

As a final matter, I note that the process of reviewing a judgment of conviction and sentence to determine the exact nature of its content is not new or unusual. *See State v. Grinolds*, 223 Or 68, 353 P2d 851 (1960) (engaging in such an analysis as it applied to the state's then-existing habitual criminal act). For example, a sentencing court must evaluate the elements of the crime underlying a prior out-of-state conviction when a challenge is made under ORS 137.079 as to how that prior conviction fits in the current sentencing system. *See, e.g., State v. Tapp*, 110 Or App 1, 821 P2d 1098 (1991) (so doing). The same is true for out-of-state convictions for driving while under the influence of intoxicants (DUII). *See Dyrdahl v. DMV*, 204 Or App 509, 131 P3d 770 (2006); *State v. Ortiz*, 202 Or App 695, 124 P3d 611 (2005).

We have also engaged in the process of reviewing convictions to determine whether they count for purposes of sentencing under ORS 161.610. *See, e.g., Thiehoff*, 169 Or App at 636-37; *Pies*, 104 Or App at 648-51. In *Pies*, the defendant was convicted of robbery in the first degree with a firearm because he had aided and abetted another individual. 104 Or App at 648-49. Although we upheld the underlying robbery conviction, we went on to consider the facts of the case to determine whether that conviction provided the requisite finding under ORS 161.610 that the defendant had personally used or threatened to use a firearm in the commission of the crime for which he was convicted—even though

---

[17] The majority finds significance in the fact that the legislature did not amend ORS 161.610 during its 1983 session, but rather waited until its 1985 session. I find that fact of no importance at all. *Wedge* was decided just months before the 1983 legislative session began, and the legislature might have chosen not to rush a bill that it might later regret, instead choosing to wait until careful thought could result in a better bill. The legislature also might have considered other matters more pressing. Neither possibility bears any import for our interpretation of ORS 161.610.

that crime was pleaded as an aggravated crime and the conviction could facially be viewed as containing a finding of use or threatened use of a firearm. *Id.* at 649-51. We concluded that the evidence did not show that the defendant had personally used or threatened to use a firearm. *Id.* at 651. Our conclusion that the conviction could not be employed for the purpose of imposing a gun minimum sentence under ORS 161.610 did not affect or "attack" the defendant's underlying robbery conviction.

In sum, the process of review for content just described becomes even more important where, as here, the legislature changes the statutory scheme in the middle of a series of potentially significant events. I believe that the legislature intended the post-1985 version of ORS 161.610 to apply to the present sentencing. I further conclude that the legislature intended, under that statute, to count only those pre-1985 gun minimum sentences that meet the post-1985 requirements—that is, those that were based on a jury finding or a defendant's admission of use or threatened use of a firearm. That set of legislative choices can be effectuated only by examining pre-1985 gun minimum sentences to determine what they necessarily entailed.

E. *Application to the present case*

In the present case, defendant was sentenced in November 2002 and the state sought a 30-year sentence under ORS 161.610(4)(c). That statute permitted and required the sentencing court to sentence defendant to a 30-year gun minimum sentence only if defendant previously had been imprisoned "pursuant to paragraph (b)," that is, for a felony, conviction for which necessarily included an admission or a finding by the finder of fact of use or threatened use of a firearm in the commission of the crime, and had been punished before that for another such felony "pursuant to paragraph (a)." Although the sentencing court did not, and the majority refuses to, engage in that analysis, I believe that we must.

Because defendant did not challenge the applicability of the 1991 gun minimum sentence to the present sentencing, I assume that it applies. However, defendant did challenge the applicability to the present sentencing of the

1983 gun minimum sentence. I believe that we must therefore determine whether the conviction underlying the 1983 gun minimum sentence provides the necessary admission or jury finding of use or threatened use of a firearm. The record indicates that defendant did not admit to use or threatened use of a firearm in 1983, so the 1983 sentence can only have been imposed pursuant to ORS 161.610(4)(a), if the jury made such a finding. The 1982 indictment is set out above. At the time of that indictment, first-degree robbery was defined in ORS 164.415(1):

"A person commits the crime of robbery in the first degree if the person violates ORS 164.395 and the person:

"(a)  Is armed with a deadly weapon; or

"(b)  Uses or attempts to use a dangerous weapon; or

"(c)  Causes or attempts to cause serious physical injury to any person."

ORS 164.395, in turn, provided, in part:

"(1)  A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a)  Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking * * *."

In comparing those statutes with the 1982 indictment, I note that most of the language in that indictment, including the threat of immediate use of physical force, served to set out the elements of third-degree robbery. The phrase "and was armed with a deadly weapon, to-wit: a gun" served to set forth one element that elevated the seriousness of the crime from third-degree to first-degree robbery. I make that observation for two reasons. First, the phrase "threaten the immediate use of physical force" as stated in the 1982 indictment is not necessarily linked to the reference to the deadly weapon. At least one purpose for the inclusion of that phrase is to complete the "physical force" requirement of ORS 164.395(1). Thus, a conviction under the wording of the 1982 indictment would not necessarily include a finding of use or threatened use of a firearm merely because those words and

phrases, or their functional equivalents, are included in the accusatory instrument. Second, use or threatened use of a firearm as an element in aggravation was not pleaded in the 1982 indictment and, therefore, could not have been proved at trial.[18]

I next turn the inquiry to whether inclusion of the phrase "and was armed with a deadly weapon, to-wit: a gun" in the 1982 indictment means that the jury in 1983 necessarily found that defendant used or threatened to use a firearm. I conclude that it does not for two interrelated reasons. First, ORS 164.415(1), as it existed in 1983, drew a distinction between being "armed with a deadly weapon" in paragraph (a) and "us[ing] or attempt[ing] to use a dangerous weapon" in paragraph (b). Second, being armed with a firearm and using or threatening to use that firearm are not equivalent.[19] I conclude, therefore, that when the jury found defendant guilty of the crime charged in the 1982 indictment, it did not necessarily find that he used or threatened to use a firearm in the commission of the crime as charged because the jury's conviction under the 1982 indictment can be read as finding a threat of physical force and a separate element of being armed with a gun. That conclusion is consistent with the actions of the sentencing court in 1983. The record indicates that the sentencing court availed itself of its special factfinding authority and duty to determine whether defendant used or threatened to use a firearm. Under the version of ORS 161.610 then in effect, the court would not have made that finding unless it understood the jury's verdict not to necessarily include a finding of use or threatened use of a firearm.

In summary, I would hold that the 1983 conviction does not satisfy the requirements of ORS 161.610 (2001), the version in effect at the time of sentencing in this matter,

---

[18] For instance, the title of the offense in the 1982 indictment does not include the words "with a firearm" as contemplated in ORS 161.610(2). That mode of charging did not exist then. Yet even if it had existed, that charge alone might not suffice if the conviction was not necessarily based on personal use or threatened use of a firearm. *See Pies*, 104 Or App at 648, 651.

[19] We have stated that being armed with a deadly weapon—*e.g.*, a firearm "requires mere possession." *State v. Johnson*, 174 Or App 27, 32, 25 P3d 353 (2001). We have also stated that a person committing first-degree robbery pursuant to ORS 164.415(1)(a) need not "make any representations," such as threats, about being armed. *State v. Zimmerman*, 170 Or App 329, 333, 12 P3d 996 (2000).

because defendant was not, in 1983, "convict[ed] for such felony" under ORS 161.610(4)(a) (2001), that is, the jury in 1983 did not find, and defendant did not admit, that he had used or threatened to use a firearm in the commission of the crime. Therefore, for purposes of the present sentencing proceeding, the 1983 gun minimum sentence was not actually imposed "pursuant to" ORS 161.610(4)(a) and the sentencing court in the instant case did not err in refusing to consider that sentence as a "punishment pursuant to paragraph (a)," which would have supported an "imprisonment pursuant to paragraph (b)" for defendant's 1991 gun minimum sentence and an imprisonment under paragraph (c) for defendant's current conviction.

My conclusion regarding the 1983 gun minimum sentence raises the question of the resulting significance of the 1991 gun minimum sentence. Although the sentencing court in 1991 imposed a 10-year gun minimum sentence under ORS 161.610, ostensibly "pursuant to paragraph (b)," that sentence cannot actually have been imposed "pursuant to paragraph (b)" because, as I would hold, defendant was not actually punished in 1983 "pursuant to paragraph (a)." Defendant's 1991 conviction, then, was his first "for such felony" and the sentencing court in the present matter was correct to consider the 1991 gun minimum sentence to have been equivalent to a punishment imposed "pursuant to paragraph (a)." Thus, I would hold that the sentencing court was also correct to sentence defendant in this case to 10 years under paragraph (b).

For the foregoing reasons, I respectfully dissent.

Armstrong, Wollheim, and Ortega, JJ., join in this dissent.